## HUGH MYERS v. VILLARD CREAMERY COMPANY AND ANOTHER.[1]

June 9, 1933.

No. 29,470.

*Durham & Lystad,* for relators.
*Frank J. Zima,* for respondent.

*HOLT, Justice.*

Certiorari to review an award of compensation for an accidental injury suffered by respondent while at work for the relator creamery company.

Respondent is a blacksmith in the small village of Villard, this state, and has a smithy across the street from the plant of the relator creamery company. One Peterson, a buttermaker and licensed engineer, is manager of the creamery. Respondent is called on by Peterson to do such repairing for the creamery as comes within his line of work; and occasionally, when the creamery needs

[1]Reported in 248 N. W. 824.

additional help in the ordinary operation of its business, respondent is called and does whatever he is directed to do. For work so done, whether as a blacksmith or as a helper in running the creamery, he is paid at the rate of 75 cents per hour. Respondent is not paid each time just after doing the work, but sends in his bill, perhaps not oftener than once a year.

Mr. Peterson had designed a heating device to be used in the creamery. It consisted of a large automobile radiator placed on a base, made by respondent in the smithy. Behind the radiator was an electrically operated fan to distribute the heat. Peterson, with respondent's help, had installed this heating plant in the creamery. Several days after this was done Peterson thought the apparatus would function better if the end play in the fan could be removed and some vibration therein stopped. He called respondent over to the creamery to reduce the end play and remedy the vibration by putting a washer on the armature shaft of the motor and a rivet in the fan. Peterson was present, and he and respondent tried out and experimented with the means which they thought would correct the faults in this heating outfit. In so doing the fan accidentally struck respondent, causing the injury for which compensation was awarded.

There could be no doubt of the right to compensation had one of the regular employes of the creamery company or its manager received an injury in precisely the work respondent was doing when injured. The same would obviously hold true if respondent, when called in, had been set to handle butter-tubs or doing something pertaining to the ordinary operation of the creamery. To have that heating device function properly was perhaps as needful to the operation of business of the creamery as that of a churn therein. So, while the employment was casual, it was nevertheless in the usual course of the business of the relator creamery, and hence respondent was covered by the compensation act. If respondent had had no shop in Villard, but had been called from his home or the street to do this work under the immediate direction of Peterson, a licensed engineer, it could not well have been urged that he was an independent jobber or contractor and not the employe of the

creamery. The fact that respondent had a shop should not as a matter of law exclude him from the benefits of the compensation act. Under the evidence showing a casual employment in the usual course of relator creamery company's business, at the understood wage of 75 cents per hour, working under the immediate direction of its manager, no reasonable fault can be urged against the finding of the commission that respondent was an employe and not an independent contractor at the time he sustained his injury due to an accident arising out of and in the course of his employment.

Relator relies on Schoewe v. Winona P. & G. Co. 155 Minn. 4, 191 N. W. 1009. There the finding of the industrial commission was that the workman was an independent contractor or jobber and not an employe; here the finding is to the contrary. That case cites the authorities as to what extent the finding is conclusive in this court. It appeared in the cited case that Schoewe did jobbing work outside his blacksmith shop; that there was no express understanding or agreement to work by the hour; that apparently he did not work under the direction and supervision of the company; and that there was no evidence that he was ever called to help in the ordinary business of the company. He had done other "jobbing work" for the company, presenting his bill whenever the particular "job" was completed. We deemed there was some basis in the evidence for finding Schoewe an independent contractor and not an employe. It must be admitted that there is force in the proposition of dissenting commissioner Williams that a shopkeeper or jobber, called to make some repairs of instrumentalities necessary to the operation of a business, does not while doing such work become the employe of the one conducting the business and is not covered by the workmen's compensation act. Had respondent been accidentally injured while working on the base at his shop or had the fan and motor been sent to the shop for the adjustments and respondent injured while making them at the shop, it could not have been well contended that the commission would have been compelled to find that he was an employe of the creamery. The facts and circumstances of each case must be weighed by the in-

dustrial commission. Its conclusion as to whether the injured workman was an employe or independent jobber or contractor of the owner of the business where he worked when the accident befell him must stand if there is evidence fairly sustaining the same. In our opinion the evidence sustains the finding under review.

The award of the commission is sustained with $50 attorney's fees in this court to be taxed as costs in favor of respondent.

WILSON, Chief Justice (dissenting).

Ordinarily, one who operates a blacksmith shop, typewriter repair shop, electric shop, plumbing shop, paint shop, and similar places of business is regarded as a business man or an artificer, operating his own business as an independent contractor, and the relation of employer and employe which arises out of contract does not result from engaging him to do a particular piece of work. Of course almost any man may step aside from his usual occupation to do work for another under such circumstances as would mean that he was an employe. Any persons operating such shops as above mentioned may of course do this. Myers may have worked for the creamery on other occasions under circumstances wherein he was an employe, but that does not control in this particular engagement. Each engagement was a separate contract.

Had Mr. Myers suffered his accident while constructing the base in his shop as a blacksmith, it would seem that no one could successfully assert that he was an employe. But when Myers went to the creamery on the day in question, he was asked to install a washer and put in a rivet. He undertook to do this. It is claimed that in doing this work he was under the control of Peterson, as the representative of the creamery, and hence that he was an employe.

Myers did testify that in doing this work he was under the direction and control of Peterson. The statement of control, however, was a mere conclusion. He says Peterson told him what to do. Peterson also testified that he directed Myers what to do, and he himself exercised his own judgment as to what work needed to be done about the plant. In short, Peterson wanted the vibration re-

moved from this apparatus. He knew what was necessary. He knew that a rivet and a washer should be installed; and, as we construe the record, he, while in control of the plant and in charge of what was to be done therein, directed Myers to install a rivet and a washer. How they were to be put in rested with and in the judgment of Myers. He was not under the control of Peterson as to the movements, manner, and means necessary to reach the desired result, which obviously was the only thing in which the creamery was interested.

It is true that Peterson decided and directed what he wanted done, but he did not assume to say to Myers how he should do the installation, nor did he designate the tools to be used. That was in fact left to the judgment of Mr. Myers. He did not presume to control the manner of doing the work. Peterson and the creamery simply were not interested therein; but if they were, they contented themselves by leaving the method and manner of doing the work to Myers, who knew how. The undisputed evidence is that Peterson asked Myers to do this work because he himself could not do it. It is not every man who can make such repairs on an electric motor as is here involved. It would be an anomalous situation for Peterson to direct how a job should be done when he himself could not do it. It might just as well have been a clock needing repair before it would run, or it is analogous to an automobile mechanic who has been called out in the country to repair a broken-down car. The control and direction involved relate to the necessity for and propriety of acting—not the manner, means, or method of doing the work.

As we construe the record, Myers was rendering the creamery a service in the same line in which he operates a shop. The apparatus could not be taken down and removed to his shop conveniently and economically, so Myers walked across the street, presumably with his tools, and there did the work in the capacity of an independent contractor and not as an employe. The fact that he was paid by the hour does not control. Going from his shop into the creamery and there doing the work cannot under the circumstances change

his status of a contractor to an employe of the customer desiring his service.

The respondent, in my judgment, belonged to that class of independent job workers such as general blacksmiths, job carpenters, plumbers, electric fixture repair men, and many others who are engaged in independent job work who may employ others to assist them and who usually work at their particular vocation either alone or with such employes as the extent of their business may require. While they are engaged in their particular line of activity they are not the employes of those whom they serve, but are independent contractors. The fact that they themselves perform work in accomplishing the undertakings that they assume does not make them employes of the persons whom they serve and therefore entitled to the benefits of the workmen's compensation law.

See also Holmberg v. Amundson, 177 Minn. 55, 224 N. W. 458, 225 N. W. 439; Angell v. White Eagle O. & R. Co. 169 Minn. 183, 210 N. W. 1004; Schoewe v. Winona P. & G. Co. 155 Minn. 4, 191 N. W. 1009.

The question before us is one of law. There is no dispute in the facts. The opinion should reflect our conclusion of law rather than pass the responsibility to the industrial commission as a fact-finding tribunal.

*LORING, Justice* (dissenting).

I take the view that Myers was an independent contractor as a matter of law.