## ANNA SOFIA OLSON v. ECK'S HOMEMADE SAUSAGE COMPANY AND ANOTHER.[1]

May 17, 1935.

No. 30,310.

Cobb, Hoke, Benson, Krause & Faegre and W. O. Rogers, for relators.

Lystad & Mantor, for respondent.

[1] Reported in 261 N. W. 3.

DEVANEY, CHIEF JUSTICE.

*Certiorari* to the industrial commission to review an order allowing compensation to respondent, deceased's dependent mother.

For about ten years deceased had been employed by the Standard Sausage Company as a salesman in a territory which included part of St. Paul and ran north on what is known as highway No. 1 to Pine City, Minnesota. He was out of work in December, 1932, and made application for employment to the Eck Homemade Sausage Company of Minneapolis, Minnesota, hereinafter referred to as the Eck company or the company. He started work for that company on or about December 5, 1932. There is a dispute as to the conversation which took place at the time that deceased engaged his services to the Eck company. The conflict in the testimony leads to a dispute between the parties as to whether deceased was an independent merchant selling his own wares or whether he was an employe. January 16, 1933, he was killed while driving his automobile near Hugo, Minnesota. His dependent mother, respondent, instituted this proceeding against the Eck company and its insurer. The referee found that the relationship of employer and employe did not exist between deceased and defendant Eck company, and denied compensation. The industrial commission reversed that finding. It is the latter order that the company brings here for review.

Three questions are presented:

(1) Did a contract of employment exist between deceased and the company?

(2) Did the accident arise out of and in the course of deceased's employment with the company?

(3) Was deceased's income and contribution to his mother's support at the time of his death in excess of eight dollars weekly?

We think the evidence supports the finding that deceased and the company were in the relationship of employer and employe. The evidence is not of the most satisfactory character. Deceased's brother was present when the company engaged deceased's services. He testified that Mr. Eck, the president, told deceased he would pay him three cents a pound commission on sales and requested

him to take his old territory, *i. e.,* the one he had traveled when working for the Standard Sausage Company. Deceased at that time owned his own truck. When he started with the Eck company he was required to have "Eck Homemade Sausage Company" painted thereon. The company paid for having this done. The company furnished deceased with a coat or smock of light gray material which bore in red letters on the back "Eck Homemade Sausage Company." These smocks were furnished to deceased by the company twice a week, freshly laundered. Deceased also was supplied with books or pads of invoice slips each bearing the printed words "Eck Homemade Sausage Company." It appears that the Eck company had seven salesmen, all confined to rather well-defined routes. Three used trucks furnished by the company and were paid a salary. Four used trucks owned by themselves and were not paid regular salaries. These four were charged with the price of merchandise taken out at the rate of three cents a pound less than retail prices. The difference was the remuneration earned. Whether it be called a profit or a commission is of no importance. Deceased handled Eck company's sausage exclusively, and his arrangement was substantially that of the other salesmen who owned their own cars.

The defense is that deceased was engaged in an independent business of his own. During part of the time he was working he was required to pay in advance for some of his goods. We do not think this is at all controlling or significant. In the last analysis it was a question of conflicting evidence. We think the evidence is sufficient to support a finding of employment. What we might have found had we been the commission is immaterial. Our function as an appellate court is not to make an independent finding but to ascertain whether the evidence supports the finding made by the commission. Here we think the evidence is sufficient to support the finding that deceased and the company were in the relationship of employer and employe. Authoritative control by the employer over the employe is necessary to establish this relationship. Nesseth v. Skelly Oil Co. 176 Minn. 373, 223 N. W. 608, and cases therein cited; Wass v. Bracker Const. Co. 185 Minn. 70, 240 N. W. 464. Here, if

the testimony on respondent's side be believed, it could be found that deceased was assigned to a specific territory, that he was instructed to call on certain customers, that he was paid a stated commission, and that the company exercised such a control over his activities as would establish the employer and employe relationship.

■ Clearly the finding that the accident arose out of and in the course of employment is justified by the evidence. It was shown that on the date of the fatal injury deceased had called on customers within his territory. His car had overturned and was found, together with his body, about eight p. m. The car was headed toward Minneapolis. The accident happened in the vicinity of Hugo, Minnesota, which is within the territory to which deceased had been assigned. Under the principle laid down by this court in Henry v. D. A. Odell M. C. Co. 191 Minn. 92, 253 N. W. 110, a presumption arises that deceased was within the course of his employment. He had no "usual working hours." He had made calls on the day of his death. He was traveling in his usual territory and toward Minneapolis. At the time he was garbed in the Eck company's smock. His car was laden with Eck company's products. There is no evidence that he was attending a personal errand or setting out on a venture of his own. In the absence of such evidence, the presumption controls.

■ The evidence is sufficient to support the finding that at the time of his death deceased was earning and contributing to his mother's support more than eight dollars per week. The bookkeeping system used by the company is entirely inadequate to reveal the transactions had between the company and the various salesmen. As to salesmen receiving a salary, the only means of ascertaining the amount received was by check book stubs. The president of the Eck company was unable to give any estimate of deceased's earnings. Deceased was a salesman of 12 years' experience and was operating in a familiar territory. Three other salesmen employed on the same basis as deceased earned net, according to defendant's president, between $30 and $35 weekly, less expenses of running the car. Deceased's mother had no income other than that brought in by deceased. The above facts furnish sufficient support, if only by in-

ference, for the finding that deceased earned and contributed to his mother's support in excess of eight dollars weekly.

Respondent is allowed $100 attorneys' fees in this court.

Affirmed.