## JOHANNA KORTHUIS v. SODERLING & SONS.[1]

October 20, 1944.

No. 33,816.

*Fosnes & Rolloff,* for relator.
*Mark F. Crotty* and *C. E. Warner,* for respondent.

MAGNEY, JUSTICE.

*Certiorari* to the industrial commission to review an order granting compensation for death.

The facts, which are not in dispute, are detailed as follows: Relator, Soderling & Sons, is in the dry-cleaning and tailoring business in the city of Willmar. It has no agencies. On August 24, 1940, Lubbert Korthuis began to bring in work for relator. He would pick up clothing, and relator would do the dry cleaning and repairing. He was the owner of a Chevrolet truck, which was used in the work. Relator had nothing to do with the financing of the truck and had no expense in connection with its operation. On

[1]Reported in 16 N. W. (2d) 285.

the sides of the truck were painted the words "Soderling & Sons," "Sanitone" (a type of cleaning trademark), relator's telephone number, and "Willmar." Korthuis paid for this lettering. His name did not appear on the truck. He had some cards painted for the car windows which had the words "Soderling & Sons, Dry Cleaning and Tailors," and relator's telephone number on them. Korthuis paid for these also. Relator furnished Korthuis with slips carrying its name to be used for the purpose of soliciting business. It also furnished him with "Sanitone" circulars for the same purpose. Korthuis solicited business for himself. The financial arrangement between Korthuis and relator was, in effect, that the dry cleaning would be done for wholesale only, the price to be set by relator. The repairman set the wholesale price on repair work. Korthuis set the price to a customer and marked this price on the ticket as he packaged the garments. Usually the amount paid to relator represented one-half that charged the customers. Korthuis' profit was represented by the difference between the wholesale price, which he paid relator, and what he received from the customers. Relator had no control over the price that Korthuis fixed. His telephone calls were received at relator's office, and notes for him were put on a spindle. He was supposed to come in every evening for a checkup, but sometimes he did not do so. Relator insisted that it be done every day. Sometimes the full amount Korthuis owed relator would not be paid. This was then charged to him on a cash slip. There is nothing in the record to show that Korthuis extended credit to his customers. No record was kept by relator of Korthuis' customers, and in no instance was a charge made to a customer. There was no time set as to when Korthuis was to work. He could solicit one or five days a week. There was nothing said about any particular place he was to go or what customers he was to call on. He was given no directions. He was not assigned any specific territory, but was told that he would not be permitted to solicit business in Willmar. There was no agreement as to how long he was to do this work. If dissatisfied, relator could refuse to do his cleaning. Relator paid social security on the

basis of the wholesale price of the work done and made no deductions from his earnings. On the report sent to the government, Korthuis was listed as one of the employes. As to why these payments were made, Richard Soderling testified:

"In view of the fact that I was not informed well enough to know exactly whether I had to pay or whether I didn't, I paid the social security, rather than be liable for not paying it * * * to be on the safe side."

Korthuis died on April 26, 1941, as the result of injuries sustained on that date. After his death, his brother, George Korthuis, took over the southern part of his route, and, through arrangement with relator, one Henry Sandry took over the balance.

The referee found that "Korthuis was not in the employ of Soderling & Sons." This finding was reversed by the industrial commission and compensation allowed. We are now asked to determine from the undisputed facts, which we have recited in detail, whether Korthuis was an employe or an independent contractor. The task is not an easy one.

In Wicklund v. North Star Timber Co. 205 Minn. 595, 599, 287 N. W. 7, 10, this court stated the applicable rule as follows:

"* * * The test of the relationship is right of control. The rule generally stated is that a servant is a person employed to perform service for another subject to the employer's right of control with respect to his physical conduct or the details in the performance of the service. An independent contractor is one who undertakes to do a specific piece of work without submitting himself to the control of the contractee as to the details of the work, or renders service in the course of an independent employment, representing the contractee only as to the result of the work and not the means by which it is accomplished. Waters v. Pioneer Fuel Co. 52 Minn. 474, 55 N. W. 52, 38 A. S. R. 564."

In the instant case, Korthuis was the owner of the truck, furnished his own gasoline and oil, and paid for all repairs. These facts alone do not make him an independent contractor. The fol-

lowing cases, cited and discussed in the Wicklund case, which involved a hauler of pulpwood who furnished his own truck, support this holding: Herron v. Coolsaet Bros. 158 Minn. 522, 198 N. W. 134; Dunn v. Reeves Coal Yards Co. Inc. 150 Minn. 282, 184 N. W. 1027; Elliason v. Western C. & C. Co. 162 Minn. 213, 202 N. W. 485; Angell v. White Eagle O. & R. Co. 169 Minn. 183, 210 N. W. 1004; Warner v. Fullerton-Powell Hardwood Lbr. Co. 231 Mich. 328, 204 N. W. 107.

In Anfinson v. A. O. U. W. Ins. Co. 212 Minn. 183, 3 N. W. (2d) 7, it was held that the owner of a stationary sawmill, who was killed while sawing logs on land owned by an insurance company, was an employe of the company.

In Olson v. Eck's Homemade Sausage Co. 194 Minn. 458, 261 N. W. 3, a salesman driving his own automobile was killed in the course of his employment. On the facts in that case, he was found to be an employe.

There is very little importance to be attached to the fact that Korthuis was operating his own car. He paid relator the wholesale price for all dry cleaning and repairing of the clothing he brought in. He fixed the amount he charged his customers. Relator had no control over the arrangement Korthuis had with his customers. In the Anfinson case, where the employe was to get five dollars per thousand for sawing logs, this court held (212 Minn. 186, 3 N. W. [2d] 9) that it is wholly immaterial "that he was paid on the basis of what he produced."

In the Angell case, where the employe sold oil on a commission basis, this court commented (169 Minn. 186, 210 N. W. 1005): "Payment by commissions is the equivalent of the payment of wages."

In the Olson case, the deceased was selling sausage on a commission basis. He was charged three cents a pound less than retail prices. The difference was the remuneration earned. This court said (194 Minn. 460, 261 N. W. 4): "Whether it be called a profit or a commission is of no importance." In the instant case, the

remuneration was on a profit basis. Under our decisions, compensation may be by commission or profit or on a piecework basis.

Thus the fact that deceased here owned his own truck and paid for all supplies and repairs and that he was paid on the basis set out in detail in the statement of facts does not make him an independent contractor.

The difficult question to determine is whether, from the evidence, relator had the right of control necessary to establish the employment relationship, i. e., "the right of the employer to control the means and manner of performance." Bolin v. Scheurer, 210 Minn. 15, 17, 297 N. W. 106, 107; Wicklund v. North Star Timber Co. 205 Minn. 595, 287 N. W. 7, *supra*. This authoritative control by the employer over the employe is necessary to establish this relationship.

In Nesseth v. Skelly Oil Co. 176 Minn. 373, 374, 223 N. W. 608, this court stated:

"There can no longer be any doubt but what the real test as to whether a person is an independent contractor or an employe is whether the asserted employer, under his arrangement with the other party, has or has not any authoritative control of the latter with respect to the manner and means in which and by which the details of work are to be performed. In the last analysis this test must always determine what was the essential nature of the relationship of the parties," citing cases.

In the instant case, Korthuis could work whenever he wished, go when and where he chose, except within the city of Willmar, and select his routes and customers. "But this is no more than the privilege of many traveling salesmen who are usually treated as within the compensation act," as this court said in Nesseth v. Skelly Oil Co. 176 Minn. 375, 223 N. W. 609, *supra,* in a somewhat similar situation.

The arrangement with Korthuis could be terminated by relator at any time. This right to terminate a contract at will gives the employer full control over performance and satisfies the require-

ment that authoritative control by him over the employe is necessary to establish the employment relationship. In Bolin v. Scheurer, 210 Minn. 18, 297 N. W. 107, *supra*, this court said:

"* * * About all that their contract contemplated was that Scheurer should continue working until told to quit. This reserved power of discharge assured to Mankato full control over performance."

And in the Anfinson case it is stated (212 Minn. 187, 3 N. W. [2d] 9): "This unrestricted right of discharge afforded adequate means for controlling Anfinson's work." See, also, Nesseth v. Skelly Oil Co. *supra;* State ex rel. Virginia & R. L. Co. v. District Court, 128 Minn. 43, 150 N. W. 211; Lynch v. Hutchinson Produce Co. 169 Minn. 329, 211 N. W. 313.

Relator could refuse to do the cleaning and repairing for Korthuis at any time, and this would definitely terminate the relationship. Korthuis was forbidden to solicit business in the city of Willmar. Relator insisted that a checkup of the business done by Korthuis be had every evening. The lettering on the truck, as well as all the literature and slips furnished by relator, advertised its business. The name of Korthuis did not appear anywhere. Relator gave a plausible reason for paying the social security tax on Korthuis and listing him as an employe, and such tax was actually paid; and when relator paid this tax on its employes the name of Korthuis appeared on the list.

In Nesseth v. Skelly Oil Co. 176 Minn. 376, 223 N. W. 609, *supra,* this court said:

"Our construction of the contract is that it was revocable at the will of the company. This court has said that such right affords adequate means for control. State ex rel. V. & R. L. Co. v. District Court, 128 Minn. 43, 150 N. W. 211; Lynch v. Hutchinson Produce Co. 169 Minn. 329, 211 N. W. 313. It certainly has possibilities in that direction. * * * When the control relates to the personal services and personal action of the agent in the accomplishment of the purposes of the contract, it is indicative of the relation of em-

ployment. The subject matter of this contract was the personal services of the agent. It was not the accomplishment of a definite result."

So, here, the activities of Korthuis were in the nature of personal services, which are usually performed by employes, and it did not involve the accomplishment of a definite result.

The case of Olson v. Eck's Homemade Sausage Co. 194 Minn. 458, 261 N. W. 3, *supra,* has many features similar to those in the instant case. However, on its facts, it is more favorable for compensation than this case. There, it could be found that deceased was assigned to a specific territory, instructed to call on certain customers, paid a stated commission. However, the industrial commission has found that the relationship of employer and employe existed here and has awarded compensation. This court in numerous cases has said that what we might have found if we had been the commission is immaterial; that our function as an appellate court is not to make an independent finding, but to ascertain whether the evidence supports the finding made by the commission. See, Anfinson v. A. O. U. W. Ins. Co. 212 Minn. 186, 3 N. W. (2d) 9, *supra,* where the court said that the commission's decision that Anfinson was an employe must stand if there was any reasonably sufficient evidence tending to support it, citing Schoewe v. Winona P. & G. Co. 155 Minn. 4, 191 N. W. 1009; Myers v. Villard Creamery Co. 189 Minn. 244, 248 N. W. 824. And see, also, Olson v. Eck's Homemade Sausage Co. *supra.*

We think the evidence is sufficient to support the finding that Korthuis and relator occupied the relationship of employe and employer.

Respondent is allowed $100 attorneys' fees in addition to statutory costs and disbursements.

Affirmed.