MELBA C. HANSEN v. PETER ADENT AND OTHERS.
J. WILBUR KROON, RELATOR.[1]

March 13, 1953.

No. 35,875.

[1]Reported in 57 N. W. (2d) 681.

*Lawrence L. Lenertz,* for relator.

*Briggs, Gilbert, Morton, Kyle & Macartney* and *Frank N. Graham,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

Certiorari to review an award of the industrial commission.

On October 26, 1950, a claim petition for compensation and benefits under the workmen's compensation act was filed with the industrial commission by one Melba C. Hansen, as widow of Kendall A. Hansen, deceased, against Peter Adent, John A. Adent, and J. Wilbur Kroon, individually and as partners doing business as Adent Bros. Produce and Adent Brothers, Inc., a corporation, employers. After hearings before a referee, an award was entered in favor of the widow and dependent children against J. Wilbur Kroon, Peter Adent, and John A. Adent, individually and as partners. J. Wilbur Kroon alone appealed to the industrial commission. The findings of the referee were affirmed.

Relator contends that he was not a member of any partnership and that Kendall A. Hansen was an independent contractor. While it is not necessary to the disposition of the case to set forth an ex-

tensive review of the record, it will be helpful to review briefly some of the evidence which was before the industrial commission.

On July 27, 1950, Kendall A. Hansen was the owner of a Mack trailer-type tractor, which he had purchased shortly before and had used only twice, on both occasions for the alleged partnership. On that date he was hired by Peter Adent for the trip on which the accident occurred. Before leaving, Hansen spent a considerable amount of time at the offices of Adent Bros. Produce. Negotiations were completed between Peter Adent and Hansen whereby the latter's tractor was leased, and by the terms of the contract it was to be under the exclusive control of the partnership. It was further agreed that the partnership would pay all the fines and half of the tolls incurred on the trip and also pay for the public liability and property damage insurance for damages in excess of $100. Hansen was then given specific instructions as to the load of eggs he was to take to Williamsburg, Virginia, and the route he was to take on the trip. There was testimony that before he left St. Paul Hansen was given instructions by Peter Adent, one of the partners, to go to Onancock, Virginia, after delivering the eggs at Williamsburg, to see the dispatcher at the eastern end of the route about picking up a return load. The trailer Hansen was to haul, while referred to in the record as registered under Reefer Trailers, Incorporated, appears to have been the property of J. Wilbur Kroon, one of the alleged partners in the trucking business. Before leaving St. Paul, Hansen was also given a check of $100 as an advance payment from Peter Adent.

After delivering the eggs, Hansen went on to Onancock, Virginia, where he met the dispatcher and was told by him to pick up a load of potatoes at Eastville, Virginia, and transport them to Cleveland, Ohio. There was some discussion at that time about a contract covering the return trip, and it appears that the dispatcher finally wrote the words "Contract same as Front side" on the back of the original contract and then gave Hansen a check for $100 from Adent Bros. Produce, signed by John Adent, as advance payment. There was evidence also that the dispatcher designated the route Hansen

was to follow to Cleveland. After delivering the potatoes in Cleveland, Hansen was supposed to try to find a load by himself rather than deadhead back to Chicago. If successful, he was to get 70 percent of the commission and the partnership was to receive 30 percent.

On August 3, 1950, en route to Cleveland with the load of potatoes, Hansen was killed when the truck went off the highway. After the accident, the Adents gave Mrs. Hansen two checks for the pay due her husband, from which social security had been deducted for Mrs. Hansen.

The evidence in connection with the association of the Adents and Kroon is as follows: The three men met early in the spring of 1950. At the time both the Adents and Kroon owned separately a considerable amount of trucking equipment on which they were having difficulties in meeting the payments. Kroon had been leasing his trailers out, and the Adents had been using their equipment in trucking produce for others and also in trucking produce which they were buying and selling. After discussing their problems, a vague verbal understanding was reached. Kroon testified that he was not a partner, although he admitted that the word might have been used by the Adents during their talks. Kroon described the arrangement as one where—

"* * * the idea was they were going to use my trailers and use their tractors and they'd make payments and see how good we'd get along with it, if something could be done with it we might make some money on it.

* * * * *

"* * * We were going to throw both our equipment into one, and see if we could use it to the best of our advantage."

Kroon was to share in the profits over and above what was needed to make payments on the equipment. He was not to share in the profits made by the Adents in the buying and selling of produce. It was understood by all the parties that, in the event not enough money was made to meet the payments on all the equipment, payments would be made on the equipment where most urgent and

that under this arrangement either or both parties might lose their equipment or part of it. During the course of their discussion, some mention was made to the effect that Kroon would be able to draw $65 per week, plus expenses.

Offices for the operation of the business were taken at 786 Eustis street, St. Paul. The active management was mostly the work of the Adents. Kroon acted in the capacity of dispatcher and had the further responsibility of seeing that the equipment was in good and safe condition. The buying and selling of produce, as well as the trucking business, was carried on under the name of Adent Bros. Produce. Separate books were not kept, and all the money received was kept in one bank account. During the summer, payments of about $4,800 were made on the equipment which Kroon had put into the operation, and he drew about $100 out of the company for himself. He also contributed $1,800 more to the business, which he deposited to the account of the business to be used to make payments on the equipment belonging either to himself or the Adents. On August 31, 1950, four weeks after the death of Kendall Hansen, Kroon and the Adents formed a corporation. Each received 80 shares of stock, a third of the amount issued. At that time each gave a bill of sale of his equipment to the corporation, which in turn assumed the liens and encumbrances against such equipment. From the record it appears that the business of the corporation and the duties of the three men were the same as under the former arrangement.

Early in November 1950, Kroon received letters from the industrial commission containing the notices of filing of the claim petition and copies of the petition. The notice addressed to Kroon personally was returned to the commission unopened. Kroon admitted receiving and opening the others and forwarding them to the Adents.

The commission affirmed the referee's findings (1) that on August 3, 1950, Peter Adent, John A. Adent, and J. Wilbur Kroon were members of a partnership engaged in the business of trucking; (2) that on August 3, 1950, Kendall A. Hansen was employed by said partnership as a driver under a Minnesota contract of hire at

a weekly wage of $125; and (3) that due service of filing of the claim petition and the order of reference and notices of continued hearings herein was had on the partnership.

It was determined that the widow of the deceased employe, for herself and dependent children, was entitled to an award against Kroon, as well as Peter and John A. Adent, individually and as partners, payable at the rate of $30 per week from August 3, 1950, subject to the provisions and limitations of the workmen's compensation act, and for the sum of $350 for burial allowance.

In view of the assignments of error, we are confronted with two issues in this case: (1) Whether there is sufficient evidence to sustain a finding by the referee that J. Wilbur Kroon was a partner of Peter and John A. Adent; and (2) whether there is sufficient evidence to sustain a finding by the referee that at the time of his death Kendall A. Hansen was an employe of the partnership.

█ M. S. A. 323.02, subd. 8, defines a partnership as "an association of two or more persons to carry on as coowners a business for profit." It is essential to the existence of a partnership that there be a joint contribution to the enterprise and something in the nature of a community of interest. Hammel v. Feigh, 143 Minn. 115, 173 N. W. 570. When parties contribute their experience, their capital, and their energies to a common enterprise, in which they are to share the profits, a partnership may result, notwithstanding an expressed intention not to create such a relationship. Whether or not a partnership exists is a fact question. Meagher v. Fogarty, 129 Minn. 417, 152 N. W. 833.

It is an established rule of this court that in reviewing the findings of the industrial commission the function of the supreme court is not to determine whether on the facts the decision of the commission is correct, or even preferable to another determination but rather, and only, to determine whether the findings have sufficient basis of inference reasonably to be drawn from the facts. Fisher v. Fisher, 226 Minn. 171, 32 N. W. (2d) 424; 6 Dunnell, Dig. & Supp. § 10426. This court has also said on numerous occasions that a finding of the commission on a question of fact cannot be disturbed

unless consideration of the evidence and the inferences permissible therefrom clearly require reasonable minds to adopt a conclusion contrary to the one at which the commission arrived. Baburic v. Butler Brothers, 233 Minn. 304, 46 N. W. (2d) 661, and cases cited therein.

In the case at bar, both parties to the arrangement contributed equipment and services. Their understanding was that they should share in the profits of the trucking business as well as the losses, in that either or both might lose the equipment which they had contributed. When Kroon contributed more money after this business was under way, he contributed it directly to the business rather than making payments as an individual on his own equipment. It also appears that, despite the fact that up to the time they incorporated Kroon was able to draw only $100, he continued to contribute his services. The fact that as a partner he was willing to contribute his services in the best interests of the business strongly indicates his community of interest. Furthermore, when the corporation was formed, the business and the duties of the three men continued to be the same as before. Regarding Kroon's lack of managerial duties, it was only reasonable that the Adents should manage the business since they had more knowledge and experience with reference to it. It is therefore our opinion that Kroon could well have been determined by the commission to have had a partnership arrangement with the Adents on the date Hansen was killed.

■ The second issue here is whether the facts as presented sustain a finding by the industrial commission that Kendall A. Hansen was an employe of the partnership at the time of his death. Relator contends that on the issue of whether Hansen was an independent contractor and not an employe petitioner has not sustained the burden of proof in establishing the fact of employment and further that Hansen was not an employe because the testimony brought out the fact that after reaching his final destination (Cleveland, Ohio) Hansen was to find a load himself, for which he would receive 70 percent of the commission. While we do not consider the latter

point pertinent under the facts and circumstances here, the apparent reason for trying to pick up another load at Cleveland was to eliminate the necessity of the return trip from Cleveland with an empty truck.

It is true that the burden of proof rests upon claimant, but where the facts as presented furnish a reasonable basis for an inference which conforms to a finding of the industrial commission it is sufficiently sustained. Kvernstoen v. Nelson, 212 Minn. 102, 2 N. W. (2d) 560.

In Larson v. Le Mere, 220 Minn. 25, 32, 18 N. W. (2d) 696, 700, we said:

"The real test, however, 'as to whether a person is an independent contractor or an employe is whether the asserted employer, under his arrangement with the other party, has or has not any authoritative control of the latter with respect to the manner and means in which and by which the details of work are to be performed' * * *."

In the case now before us, by the very terms of the lease, the partnership was to have complete control of the truck at all times during the trip and it was to furnish public liability, property damage, and cargo insurance.

The testimony brought out the fact that Hansen was given specific directions as to the route he was to take in reaching his destination. He was directed to get further instructions from a dispatcher, and in fact the dispatcher did give him further directions with respect to another load and the route he was to take in delivering it and then gave him a check as payment in advance signed by one of the partners. A further indication of how Hansen's position was regarded by the partnership was that social security was deducted from the checks given his wife after the accident for back pay owed Hansen.

Relator cites as controlling Moore v. Kileen & Gillis, 171 Minn. 15, 213 N. W. 49. That case is clearly distinguishable from the one now before us in that there relator had acquired a truck for the purpose of becoming a private carrier. The respondent had contacted him on four different occasions and had told him only

where to pick up the goods and where to take them; no other factors of control or supervision were present. Even that case was considered a border-line one. However, the court concluded that relator was an independent contractor, saying (171 Minn. 19, 213 N. W. 51), "decision is governed by the presence or absence of the right of control." In the case at bar, there are certainly more elements of control which have significance.

Whether or not the relationship of employer and employe would have terminated after the goods were delivered in Cleveland is not material to our decision, since at the time of his death Hansen was acting under the specific instructions of the partnership and in the furtherance of its business. It is therefore clear that the industrial commission could reasonably draw the inference from the evidence that Hansen was an employe of the partnership at the time of his death.

Relator also assigns as error the finding of the industrial commission that it had jurisdiction over J. Wilbur Kroon. We do not deem it necessary to consider this assignment. Kroon admits receiving and opening the envelope addressed to the partnership and concedes that, if a determination is made that he is a partner of Peter and John A. Adent, then the commission had jurisdiction over him.

Respondent is allowed $250 attorneys' fees and costs in this court. Affirmed.

MR. JUSTICE ROGER L. DELL, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.