## CALVIN PETTIS v. HARKEN, INC., AND ANOTHER.

116 N. W. (2d) 565.

July 27, 1962—No. 38,532.

*Smith, McLean, Peterson & Sullivan,* for relators.
*John E. Simmonds,* for respondent.

MURPHY, JUSTICE.

This case is before us on writ of certiorari to review a decision of the Industrial Commission. The relators contend that the respondent is not entitled to workmen's compensation benefits for the reason that at the time he was injured he was an independent contractor and not an employee.

From the record it appears that in February 1959 Harlan Hohenstein, who had been engaged in business as an individual under the name of Minnesota Valley Fertilizer Company, incorporated with others under the name of Harken, Inc. Hohenstein became treasurer and secretary of the new company. This company carried on the business of sales and service of farm implements and liquid fertilizer.

The claimant, Calvin Pettis, owned and operated a farm for a number of years. For several months prior to December 1958 Hohenstein discussed with Pettis the possibility of his employment in the sale and application of fertilizer in his community. An agreement was entered into by which Pettis undertook to act as sales representative of the company. He agreed to solicit orders for anhydrous ammonia from

farmers in the area and also agreed to do the work of applying the fertilizer. It was agreed that for all orders sold Pettis was to be compensated on the basis of 25¢ per acre. For his service in applying the fertilizer he was to be paid on the basis of $1.25 per acre. To qualify for this employment it was necessary that Pettis have certain instructions with reference to sales practices and at least some training in the method of applying fertilizer to the land. Hohenstein furnished Pettis with a customers' order book and a product price list and instructed him with reference to procedures for taking and writing orders. It was agreed that Harken would bill the customers for the amount of the order and that Pettis would have nothing to do with the collections. Hohenstein furnished Pettis with certain advertising material, including playing cards, pen and pencil sets, and combination comb sets, which he distributed to prospective customers. The product of the company was advertised in local papers. All of this material advertised that Hohenstein or the Harken company was engaged in the sale and application of liquid fertilizer. Pettis did no advertising at any time. Harken had at least four other persons working part-time on a similar basis. One or two full-time employees were engaged in substantially the same work as Pettis some of the time.

Certain equipment was necessary to apply the fertilizer to the farm land. It was applied by means of a so-called applicator, which is a tank mounted on wheels and equipped with a pump and a number of "teeth" or "knives" which serve to inject the chemical into the ground to a depth of from 8 to 10 inches. The applicator is pulled behind a tractor. Pettis used his own tractor in this work and paid the cost of gas and oil used in its operation. The applicator was owned and supplied by the company. In addition, the company furnished a large supply tank, 16 to 18 feet long and 12 feet in circumference, which was used to keep a reserve supply of the chemical. This equipment contained hoses, gauges, valves, and other parts, the use of which required a certain amount of instruction and explanation. It also appears that temperature, which affects the flow and weight of the chemical, had to be taken into consideration in adjusting the equipment and that information on this factor would be secured by Pettis through telephone calls from the Harken company.

In the conduct of his work Pettis was required to note in his records the amount of fertilizer applied, together with other data. Pettis was not accountable for the value of the chemical fertilizer furnished to him but was required to report the amount used on each job. His only contact with Harken occurred when he needed materials or parts, when he was called upon to do a particular job, and when he furnished the company with information as to the number of acres completed and the amount of fertilizer used. No formal reports were submitted for this purpose. Hohenstein copied the data that Harken needed from the notebook kept by Pettis, and this information was used for billing customers.

During the time he was employed Pettis secured nine orders for fertilizer from farmers in the St. Peter area. He did the work of applying the fertilizer on five of these orders. One of the orders he received was for a quantity of fertilizer to be applied to the Klaseus farm. On April 29, 1959, he was preparing to move the equipment to the Klaseus farm to fill this order when Hohenstein came to him, told him that the company had a sizeable order to fill at the Windleschaefer farm and that he should take the equipment there and fill that order. Pursuant to Hohenstein's instructions, Pettis moved the equipment to the Windleschaefer farm. He would have preferred to fill the Klaseus order first, but there was evidence that Pettis received the impression that if he failed to follow Hohenstein's instructions he would not keep his job. Hohenstein undertook to explain to Klaseus the reason why Pettis could not fill his order on that particular day. He helped Pettis move the equipment. The accident from which Pettis sustained injuries occurred at the Windleschaefer farm. While Pettis was refilling the applicator from the supply tank, the liquid fertilizer sprayed in his face causing burns and the loss of one eye. There was evidence in the record from which it appears that one of the officers of the Harken company told Mrs. Pettis that her husband was covered by workmen's compensation.

The issue as to whether a person is an employee or an independent contractor is troublesome and has been before us on numerous occasions. No general rule can be laid down which covers all situations. Each case must depend to a great extent upon its own particular facts.

In Graf v. Montgomery Ward & Co. Inc. 234 Minn. 485, 491, 49 N. W. (2d) 797, 801, we said:

"* * * In determining whether the relationship is one of employe or independent contractor, the most important factor is the right of the employer to control the means and manner of performance. Other factors to be considered are mode of payment, furnishing of materials or tools, control of the premises where the work is to be done, and the right of the employer to discharge the employe."

In the more recent case of Mount v. City of Redwood Falls, 260 Minn. 16, 19, 108 N. W. (2d) 443, 446, we said:

"* * * The independent contractor, as distinguished from an employee, performs work according to his own methods and without being subject to the control of his employer, except as to the result of the work. As to the element of control, we have held that the right to control rather than the exercise of the right is decisive. In addition to the right of control, other factors may be considered, including mode of payment, furnishing of materials and tools, control of the premises where the work is done, and the right of the employer to discharge the employee or contractor."

The most important factor is the right of the employer to control the means and manner of performance.[1] The fact that Pettis used his own tractor in applying the fertilizer is not controlling as to the relationship between the parties. Anfinson v. A. O. U. W. Ins. Co. 212 Minn. 183, 3 N. W. (2d) 7. There are numerous authorities holding the injured person to be an employee rather than an independent contractor where he has supplied his own tools, even where the expenditure therefor is substantial.[2] Nor does the fact that Pettis was

---

[1]Geerdes v. J. R. Watkins Co. 258 Minn. 254, 103 N. W. (2d) 641; Moorhead v. Grassle, 254 Minn. 103, 93 N. W. (2d) 678; Christopherson v. Security State Bank, 256 Minn. 191, 97 N. W. (2d) 649; Rosvold v. Independent Consol. School Dist. No. 102, 251 Minn. 297, 87 N. W. (2d) 646; Koktavy v. City of New Prague, 246 Minn. 550, 75 N. W. (2d) 774; Hansen v. Adent, 238 Minn. 540, 57 N. W. (2d) 681; Fahey v. Terp, 235 Minn. 432, 51 N. W. (2d) 273; Restatement, Agency (2 ed.) § 220.

[2]See, Korthuis v. Soderling & Sons, 218 Minn. 342, 16 N. W. (2d) 285

paid on an acreage basis rather than an hourly rate deprive him of employee status. In Olson v. Eck's Homemade Sausage Co. 194 Minn. 458, 460, 261 N. W. 3, 4, we said: "Whether it be called a profit or a commission is of no importance." It further appears from the record that the Harken company had the right at any time to reclaim their equipment and terminate the employment relationship. This fact, which is satisfactorily established, supplies the necessary authoritative control over the employee to establish the employment relationship. Bolin v. Scheurer, 210 Minn. 15, 297 N. W. 106; Korthuis v. Soderling & Sons, 218 Minn. 342, 16 N. W. (2d) 285. Moreover, we agree with the conclusion of the commission that even though Pettis was paid on a different basis he was employed in the regular course of the Harken's business in substantially the same manner as those salaried employees regularly employed by the company in the application of the fertilizer.

Applying the rule that the findings of the commission are entitled to great weight and that this court will not disturb them unless they are manifestly contrary to the evidence, we are necessarily led to the conclusion that the award must be affirmed. From the facts already stated bearing upon the employer-employee relationship it is evident that Pettis was not an independent contractor, and we do not feel a further discussion of the evidence is necessary to demonstrate that Pettis at the time of the accident was engaged in performing usual and ordinary duties involved in the conduct of Harken's regular business.

Relators rely on Fahey v. Terp, 235 Minn. 432, 51 N. W. (2d) 273, and Lemkuhl v. Clark, 209 Minn. 276, 296 N. W. 28. We have examined those authorities and are satisfied that they are clearly distinguishable on the facts.

Respondent is allowed $250 attorney's fees in this court.

Affirmed.

---

(employee used his own truck); Dahnert v. Township of Otisco, 196 Minn. 478, 265 N. W. 291 (truck); Olson v. Eck's Homemade Sausage Co. 194 Minn. 458, 261 N. W. 3 (automobile); Anderson v. Coca Cola Bottling Co. 190 Minn. 125, 251 N. W. 3 (truck); Barker v. Bemidji Wood Products Co. 184 Minn. 366, 238 N. W. 692 (truck); Rouse v. Town of Bird Island, 169 Minn. 367, 211 N. W. 327 (team and wagon).