# MILDRED M. TOUGHILL v. ALBERT MELCHER AND OTHERS.

179 N. W. (2d) 633.

September 4, 1970—No. 41469.

*Irwin Ketroser,* for relator.

*Kenneth A. Mitchell,* for respondent Melcher.

*Robb, Van Eps & Gilmore* and *Curtis C. Gilmore,* for respondents Brechet & Richter Company and Liberty Mutual Insurance Company.

Heard before Nelson, Murphy, Otis, Sheran, and Theodore B. Knudson, JJ. Consideration and decision based on briefs by entire court en banc.

MURPHY, JUSTICE.

Certiorari to review a decision of the Workmen's Compensation Commission denying relator compensation for the death of her husband, George J. Toughill, against the mercantile firm of Brechet & Richter. The commission held that Toughill was an employee of Albert Melcher, an uninsured independent contractor at the time of decedent's death, and awarded compensation against Melcher.

It appears that for some years prior to the death of Toughill on November 23, 1960, Melcher had been engaged in business under the name of Rapid Transfer Company. In that business, he operated a truck which he either drove himself or with the assistance of decedent. Melcher paid decedent on a weekly basis, and his salary ranged from $100 to $125 a week. The business consisted of making deliveries of flour for Brechet & Richter, a bakery supplier. Melcher was paid for his services on the basis of a schedule of charges according to the number of sacks of flour delivered on any given day. Occasionally he and decedent delivered other goods and performed other labor for Brechet & Richter, for which they were compensated on an hourly basis.

On an ordinary day, Melcher and Toughill would pick up freight at the Minneapolis Terminal Warehouse pursuant to delivery slips provided by Brechet & Richter. This freight would be delivered to various designated bakeries. At each delivery the

recipient would sign an invoice and a statement. Brechet & Richter would make a deduction from Melcher's compensation if any bags were broken on their rounds. In May 1960, Melcher took a construction job and sold the truck to decedent Toughill. Accordingly, until mid-October 1960, Toughill made most of the deliveries by himself. The same arrangement continued with the exception that Toughill billed Brechet & Richter for charges. In October 1960, John T. Richter, president of Brechet & Richter, contacted Melcher, told him he was going to have to let Toughill go, and inquired whether Melcher would care to resume the business. Apparently an accommodation was reached between Melcher and Toughill. The truck was resold to Melcher, and Toughill became an assistant again, drawing a salary. On November 23, 1960, while loading the truck at the Minneapolis Terminal Warehouse, Toughill suffered a fatal heart attack. After about 4 years, the widow instituted this action for recovery of compensation benefits.

The commission found that on the date of his fatal injury decedent was not an employee of Brechet & Richter but was an employee of Albert Melcher and awarded compensation benefits to be paid by the latter. The commission was of the view that Toughill was hired and paid by Melcher and had no dealings with Brechet & Richter with reference to his employment. Subsequent to this decision and before seeking certiorari, relator filed an application for leave to take additional testimony. The application was supported by an affidavit of Melcher, who was a witness at the hearing. It appears that, because of the long delay in bringing these proceedings, there was some difficulty on both sides in producing evidence which would satisfactorily develop the true relationship of the parties. The commission denied the application, however, holding that the additional proffered testimony would not "effect a change in the determination."

Relator contends that the commission should have determined that Toughill was an employee of Brechet & Richter within the meaning of the Workmen's Compensation Act. As authority for

holding that decedent Toughill was not an employee of Brechet & Richter, the commission in its memorandum stated:

"* * * This matter is covered by the rule of Guhlke vs. Roberts Truck Lines * * * 268 Minn. 141, 128 N. W. (2d) 324 * * *. See also Tretter vs. Dart, 271 Minn. 131, 135 N. W. (2d) 484 * * *."

In Guhlke v. Roberts Truck Lines, 268 Minn. 141, 128 N. W. (2d) 324, and Tretter v. Dart Transit Co. 271 Minn. 131, 135 N. W. (2d) 484, we restated the elements to be considered in determining whether one is an independent contractor or an employee. These elements include the right to control the means and manner of performance; the mode of payment; the furnishing of material or tools; the control of the premises where the work is done; and the right of the employer to discharge. In Guhlke, we held that a tractor-trailer driver, employed by a partnership engaged in interstate hauling for a large shipper, was at the time of his work-related injury an employee of the partnership and not of the shipper who had leased the partnership facilities. In Tretter, we held that an independent truckowner, engaged in contract hauling for an interstate common carrier under an arrangement where the truckowner could accept or reject loads for transportation as he desired, was not at the time of his work-related injury an employee of the company to whom he leased the equipment. We noted that if a driver and owner of a tractor wishes to make a substantial investment in such equipment, lease it to a shipper or common carrier, and operate it on the basis of an independent enterprise, he is apparently motivated by an opportunity for profit and is not an employee in the sense that that term is understood by our decisions. However, we noted (271 Minn. 138, 135 N. W. [2d] 488):

"* * * We can only say that each case must be determined on its own facts, and where as here it cannot be said that the lease is merely an arrangement to conceal the true nature of the relationship between the parties, we must affirm."

We do not feel that either Guhlke or Tretter necessarily provides a solution for the issues in this case. We are inclined to the view that the commission could not safely place the decedent workman in the same category with entrepreneurs who engaged in activities in the nature of a private business venture, owned expensive motor vehicle equipment leased to a shipper or interstate commerce carrier, and provided services in connection with such equipment. Decedent here worked on a small, flat-top, 8-year-old Ford truck making deliveries day in and day out for the same company for a period of more than 2 years.

An examination of the historical development of our law as it bears upon this relationship indicates a well-established policy of this court to guard against a narrow construction of workmen's compensation laws which would exclude a workman from its benefits. In the early cases of Herron v. Coolsaet Bros. 158 Minn. 522, 198 N. W. 134; and Rouse v. Town of Bird Island, 169 Minn. 367, 211 N. W. 327, the court considered claims of workmen injured while using independently-owned horses and wagons. We early recognized that the tests for determining whether an injured person was an employee or an independent contractor were well understood, but as we said in Lynch v. Hutchinson Produce Co. 169 Minn. 329, 331, 211 N. W. 313:

"* * * The difficulty comes in their application to the facts in a particular case. Rarely do two cases present substantially the same state of facts."

A review of subsequent authorities which reflect the development of the law applied to cases dealing with injuries to workmen who use their own motor vehicles in the performance of work for others indicates that our court has always looked behind the form of the working arrangement to find the true essence of the relationship.

In Barker v. Bemidji Wood Products Co. 184 Minn. 366, 238 N. W. 692, the workman owned a truck which he used to transport logs to the defendant's plant. He received an agreed price

per cord for hauling. Although he did this work with some regularity, it was not constant. The defendant's employees helped the workman to load his truck, and he was instructed with reference to deliveries. This court there said (184 Minn. 370, 238 N. W. 693):

"Looking at it broadly, the plaintiff was doing services of a manual kind for the defendant. He was, as we think of it generally, a laborer and not a contractor. He was doing just the work that an employe of the defendant driving one of its own trucks would do. He was getting wages for work, not making profits on a contract. A holding that he was entitled to compensation is quite in accord with the general notion of the compensation act that the industry to some extent should carry the burden of accidental injuries though it is not at fault."

With reference to the element of control exercised by the defendant, we said (184 Minn. 367, 238 N. W. 692):

"* * * There was very little supervision; very little was needed. The plaintiff worked in co-operation with other men employed by the defendant; and, once started, the work went on with a minimum of control in details."

As to the basis for compensation, we said (184 Minn. 370, 238 N. W. 693):

"That the plaintiff was receiving pay per cord and not by day or by hour or by month is not important. This was but a way of fixing his compensation much as that of a pieceworker, which the compensation act contemplates."

While the court agreed that the solution was not free from difficulty, we nevertheless held that the plaintiff in that case was in fact an employee and not an independent contractor. Subsequent cases take the same approach to the issue:

In Anderson v. Coca Cola Bottling Co. 190 Minn. 125, 251 N. W. 3, decedent owned his truck and delivered soft drinks for an employer on the basis of an hourly remuneration. The job in-

volved "specified simple work" and decedent "did not exercise any initiative." 190 Minn. 126, 251 N. W. 4. Relator was held to be an employee.

In Dahnert v. Township of Otisco, 196 Minn. 478, 265 N. W. 291, decedent owned his own truck, was hired by the town to load and haul gravel, and was compensated on a per-cubic-yard basis with no written contract. Decedent was held to be an employee as the town retained the right to control his endeavors.

In Wicklund v. North Star Timber Co. 205 Minn. 595, 287 N. W. 7, a truckdriver hauled pulpwood, being compensated on a per-cord basis. He was held to be an employee since the contract did not relate to any specific piece of work but rather called for a rendition of services.

In Whitted v. Town of Ponto Lake, 207 Minn. 333, 291 N. W. 509, decedent was hired to plow snow off the town roads and was paid at an hourly rate for his services and for the use of his truck. He was held to be an employee since control was established by the town's directive to plow the roads as needed.

As in the case before us, Byhardt v. Ballord, 209 Minn. 391, 296 N. W. 504, involved a decedent who was an employee of a small hauler who did moving for a real estate firm. With reference to the assistant's relationship to the defendant, the commission said that the truckowner's employment of the decedent as a helper was not decisive. It was held that the truckowner was an employee and not an independent contractor and that the decedent helper was likewise an employee. The court said (209 Minn. 394, 296 N. W. 505):

"* * * One who is hired and paid by an employe to help in performing the employer's work with the latter's consent and subject to his control as to the details of the work is an employe of the employer."

In Bolin v. Scheurer, 210 Minn. 15, 297 N. W. 106, the claimant was hired by an excavating contractor and paid on a cubic-yard basis. It was held that he was an employee of the city, who re-

tained full control over performance. Control was established by the power of the city to determine the extent of the work to be performed by the contractor.

In Korthuis v. Soderling & Sons, 218 Minn. 342, 16 N. W. (2d) 285, decedent truckowner picked up and delivered laundry for a dry-cleaning establishment. The compensation was realized by the difference between the wholesale price and what decedent charged customers. The court held that he was an employee and not an independent contractor.

In Hansen v. Adent, 238 Minn. 540, 57 N. W. (2d) 681, decedent owned a tractor-trailer leased to a partnership and drove it according to instructions as to load and route. It was held that decedent was an employee on the basis that the lease granted defendant complete control over the truck.

In Pettis v. Harken, Inc. 263 Minn. 289, 116 N. W. (2d) 565, the claimant-farmer, a tractor owner, was employed part time by defendant fertilizer company to sell and apply defendant's products and was compensated on an acreage basis. He was held to be an employee rather than an independent contractor.

In the more recent case of Lindbery v. J. A. Danens & Son, Inc. 266 Minn. 420, 123 N. W. (2d) 695, decedent employee's trustee was denied recovery in an action for death by wrongful act. The trial court held that at the time of his fatal injury he was not an independent contractor and that his estate's only recourse was under the Workmen's Compensation Act. Decedent was a policeman who supplemented his income by owning and operating a heavy-duty dump truck. It was agreed that he maintain and repair his equipment at his own expense and furnish his own fuel and oil. He was not carried on the employer's regular payroll; nothing was withheld from his compensation for taxes or insurance, nor did the employer treat him as an employee in reporting to its compensation carrier. As in Barker v. Bemidji Wood Products Co. *supra* and as in the case before us, there was little supervision since little was required. Decedent was paid $8 an hour compensation for truck and services, and we observed

that the rate of compensation took into account the use of his equipment and that he was actually working for ordinary wages. Based on these considerations we held the decedent to be an employee and affirmed the lower court's decision.

Although Washel v. Tankar Gas, Inc. 211 Minn. 403, 2 N. W. (2d) 43, is not similar on the facts, it is of interest in that there we affirmed a compensation award to the widow of an employee of a lessee of a gas station against the lessor gas and petroleum products dealer, holding that, in reality, the lease was a "scheme or device" to evade the obligation to provide workmen's compensation insurance.

For other authorities which discuss the question of the existence of an employer-employee relationship, see Mount v. City of Redwood Falls, 260 Minn. 16, 108 N. W. (2d) 443; Elwell v. Fake, 264 Minn. 329, 119 N. W. (2d) 19; Christopherson v. Security State Bank of Oklee, 256 Minn. 191, 97 N. W. (2d) 649. A perceptive observation is found in the latter case (256 Minn. 194, 97 N. W. [2d] 651):

"* * * In the very nature of things, there frequently arises a twilight zone in which, in spite of all the tests we may establish, there appears to be some of the incidents of the relationship of employer-employee as well as that of independent contractor. No test or group of tests can be all-inclusive. After all, tests which determine the legal relationship of the parties must be used as guide posts and not as hitching posts. In line with the liberal construction accorded workmen's compensation acts, we should not hold that a relationship exists that will defeat payment of compensation if the evidence will reasonably sustain a determination that a relationship exists which will permit recovery."

Moreover, we are not fully satisfied that the findings of the commission accord with the facts as they appear in the record. These facts particularly relate to Brechet & Richter's right to control and right to terminate or dismiss decedent from his em-

ployment. In 1960, when decedent took over the operation of the truck and worked alone, the evidence is that Richter called Melcher, told him that "he was going to have to let George [Toughill] go," and asked Melcher to return and take over the work. While Melcher's testimony to the effect that Richter told him that he would have "to let George go" is not categorically denied, Richter did testify:

"* * * I can't remember exactly what happened six years ago in October. This may have been maybe the deliveries weren't getting out at the time the customer wants deliveries and maybe I complained to Al Melcher about this to see if he couldn't improve this service."

As a result of this conversation, the truck was transferred back to Melcher, and decedent Toughill continued in his role as an assistant, performing the same work as he did before.[1]

We do not think that the relationship of Toughill and Melcher with respondent employer can be fairly equated with that of a cartage service or delivery service which holds itself out to the public as being engaged in that business. Here, Toughill and Melcher delivered exclusively for Brechet & Richter. There is no suggestion in the record that the arrangement was anything other than a day-after-day activity which provided Toughill with his complete livelihood. Moreover, while Brechet & Richter operated two other trucks, they channeled all of their deliveries of flour through Toughill and Melcher. Directions for such deliveries were by slips or orders which designated the amount of flour to be delivered to each customer and the order of such deliveries. Brechet & Richter determined during the course of any business day whether or not additional deliveries were necessary and, if so, would contact the drivers along the route and direct them to return to the warehouse, pick up sacks of flour,

[1] "To a poor man needing work, the power to dismiss immediately is equivalent to the power to control." Industrial Comm. v. Meddock, 65 Ariz. 324, 330, 180 P. (2d) 580, 584.

and deliver them to specified customers. It would appear that the activities of these drivers were as integrated into the operations of Brechet & Richter as were those of the employees who drove the trucks belonging to the firm. Melcher and Toughill also performed activities for Brechet & Richter other than delivering flour. They hauled bakery supplies and showcases, and worked with other employees in moving fixtures and merchandise. In doing this work, they would be paid on an hourly basis. The record would indicate that their services were at the disposal of Brechet & Richter and that they were expected to perform the tasks delegated to them.

We have, on innumerable occasions, said that this court reviews only questions of law presented by the record. The findings of fact by the commission are entitled to great weight, and this court will not disturb them unless they are manifestly contrary to the evidence. 21 Dunnell, Dig. (3 ed.) § 10426. While we are reluctant to depart from that rule and we do not do so here, we are constrained to the view that by its determination of the issues presented the commission may well have misplaced its reliance on authorities which do not control the particular facts. It is difficult for us to reconcile the commission's determination with both the policy of the law and the historical development of the law as it applies to the oft-recurring problem of whether one is an employee or an independent contractor. We accordingly remand the proceedings to the commission so that it may take such additional evidence as the parties may wish to submit and for its reconsideration in light of the authorities discussed and observations contained herein.

Remanded for further proceedings.

OTIS, JUSTICE (dissenting).

This is a case where the referee has found that decedent was not an employee of Brechet & Richter but was an employee of Albert Melcher. This finding of fact was unanimously affirmed by the Workmen's Compensation Commission which, in addition,

denied leave to take further testimony. Both the referee and the commission referred to Guhlke v. Roberts Truck Lines, 268 Minn. 141, 128 N. W. (2d) 324, and Tretter v. Dart Transit Co. 271 Minn. 131, 135 N. W. (2d) 484, in their memoranda. The majority now departs from the long-standing rule that we will not review findings of fact by the Workmen's Compensation Commission if there is any evidence to sustain them. It is apparent that the majority is motivated largely by the fact the actual employer, Melcher, is uninsured and the respondent, Brechet & Richter, with whom Melcher contracted, is insured.

This case is unlike Lindbery v. J. A. Danens & Son, Inc. 266 Minn. 420, 123 N. W. (2d) 695, where the decedent was dealing directly with defendant. Whatever may have been the relationship in Lindbery, it was created between the two principal parties. More significantly, the decedent driver was there paid by the hour in much the same manner as other employees. In the instant case, on the other hand, decedent dealt with Brechet & Richter only briefly during an interval when Melcher had sold decedent his truck. The remainder of the time and at the time of his death decedent was Melcher's employee. Melcher hired him and paid him, and at the beginning when there were insufficient funds available to Melcher decedent went unpaid. I am at a loss to understand how Melcher by his dealings with decedent imposed upon Brechet & Richter a relationship with decedent which now we suggest rises to the dignity of employer and employee. Brechet & Richter had absolutely no control over decedent and no right to terminate his employment. Those powers were vested entirely in Melcher.

I fail to see how either the referee or the commission misplaced reliance on the Guhlke and Tretter cases. In Guhlke, we said (268 Minn. 146, 128 N. W. [2d] 327):

"* * * Finally, while it is no doubt true that Doughboy, as the principal source of Roberts' trucking business, was in a position to exert considerable influence with respect to the avail-

ability of the truck tractor and semitrailers owned by Roberts, the quality of personnel employed by this concern, and the time and order of delivery, we do not feel that this fact is a sufficient basis for a finding of joint employment."

There, as here, we did not find the contracting defendant's control over decedent's employment enough reason to create an employer and employee relationship between the shipper and the decedent driver. In Tretter, as in Lindbery, the decedent was the owner of the equipment and was not, as here, the employee of the owner. There we set forth the elements which persuaded us that the decedent was an independent contractor in the following language (271 Minn. 134, 135 N. W. [2d] 486):

"In measuring the facts in this case by the foregoing rule, it may be said that numerous factors which appear in the record identify the decedent as an independent contractor rather than an employee. He owned his own equipment which represented a substantial financial outlay; he leased it to the carrier. In the operation of it, he paid for its maintenance including oil and gasoline, carried his own collision insurance, and was compensated on the basis of a percentage of the tariff rather than on a wage scale. Social security tax was not withheld by the transportation company, nor did it withhold income tax. He filed his own tax returns as one engaged in an independent business. He was free to reject or accept loads for transportation as he desired. At all times the tractor was under his control."

If in the Tretter case decedent was not an employee, certainly this decedent, who was one step removed, cannot be found an employee as a matter of law.

This is a case where the death out of which this claim arises occurred almost 10 years ago, the claim was not asserted for almost 4 years, a unanimous commission has affirmed the referee in a finding of fact with respect to the relationship of the parties, and the matter should be laid to rest.

PETERSON, JUSTICE (dissenting).

I concur in the dissent of Mr. Justice Otis.

MR. JUSTICE KELLY, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.