JACOB BYHARDT AND ANOTHER v. JOHN A. BALLORD AND OTHERS.

HARRY L. TRIMBLE AND ANOTHER, RELATORS.[1]

February 14, 1941.

No. 32,583.

[1]Reported in 296 N. W. 504.

*Hoke, Cobb & Janes,* for relators.
*A. I. Levin* and *George G. Chapin,* for respondents.

PETERSON, JUSTICE.

*Certiorari* to review a decision of the industrial commission awarding compensation to respondents for the death of their son, Oswald Jacob Byhardt.

Relator Trimble was engaged in the real estate business in Minneapolis. He employed one Brundage to move his office furniture, equipment, and safe from his office in the Security building to an office in the Hodgson building, which is across the street.

Brundage was regularly employed hauling and making deliveries with his own truck by three small concerns on a piecework basis. Over 90 per cent of his work was for these concerns. They controlled and directed him in his work and at times had other employes assist him. He took odd hauling and trucking jobs as they came his way. He had no office and kept no records or books of account. Telephone calls for such jobs were taken by his wife at their home. He did not hold himself out as a moving or trucking contractor.

Decedent was employed as an upholsterer. During time off from his regular employment he was employed occasionally by Brundage as a part-time helper in doing the extra moving jobs.

The day before the Trimble moving job was done, Brundage was called by telephone by a third party to do the moving for Trimble. Brundage arranged with decedent to assist him at an agreed wage of 50 cents per hour. On April 22, 1939, the two men went to Trimble's office in the Security building. After looking over the chattels to be moved, there was some discussion as to Brundage's charge for doing the job, but it was finally agreed that it would be between $4.50 and $5.00 depending upon the character of the work and the amount of time consumed.

There was evidence that Trimble exercised control over Brundage and decedent with their acquiescence by supervising the performance of the work. For example, he gave directions as to the manner of moving a roll-top desk and that the safe should not be moved until he had ascertained whether Brundage's truck was too light for the purpose. After Trimble had examined the truck to determine its suitability for the job, the men took his belongings from the Security building office, put them on the truck, and moved them to the Hodgson building.

When Brundage and decedent were pushing the safe on its wheels off the truck over some planks onto the elevator in the Hodgson building, the back wheels slipped off the planks onto the floor of the elevator, causing it to sag and the safe to tip against decedent so as to pin him between the top of the safe and the wall of the elevator shaft. Decedent died from the injuries thus sustained.

At the hearing the referee excluded a certain exhibit which was offered by relators, but it appears from the record that the exhibit was considered by the commission.

The commission based the award of compensation upon a finding that decedent was an employe of Trimble. This was upon the theory that Brundage was an employe and not an independent contractor and that decedent was simply Brundage's helper.

Relators contend that decedent was not employed by Trimble, but by Brundage, whom they claimed was an independent contractor; that the accident did not arise out of and in the usual course of Trimble's business; and that the commission erred in failing to consider the exhibit to which reference has been made.

■ The test by which the relationship of the parties is determined is right of control. A servant is one who is employed to perform a service in which he is subject to the employer's control as to the details of the work. An independent contractor undertakes to do a specific piece of work for another without submitting himself to such party's control as to the details and binds himself only as to the result. Lemkuhl v. Clark, 209 Minn. 276, 296 N. W. 28; Bushnell v. City of Duluth, 209 Minn. 27, 295 N. W. 73; Wicklund v. North Star Timber Co. 205 Minn. 595, 287 N. W. 7. Whether or not such right of control exists is to be determined in the particular case, as relators concede, from all the facts and circumstances.

Brundage's employment of decedent as a helper is not decisive that Brundage was an independent contractor and that decedent was Brundage's and not Trimble's employe. One who is hired and paid by an employe to help in performing the employer's work with the latter's consent and subject to his control as to the details of the work is an employe of the employer. Dahnert v. Township of Otisco, 196 Minn. 478, 265 N. W. 291; Herron v. Coolsaet Bros. 158 Minn. 522, 198 N. W. 134.

An inference that Trimble had such right of control was permissible. There can be no serious dispute that he knew of Brundage's employment of decedent as a helper and that he exercised such control over decedent as well as Brundage. The evidence supports the finding that decedent was an employe of Trimble.

■ Relators concede, in accordance with the well established rule recently reiterated in Chisholm v. Davis, 207 Minn. 614, 616, 292 N. W. 268, that an employment must be both casual and not in the usual course of the employer's business to take it out of the statute where such grounds are relied on. There is no dispute that

the employment here was casual. The only question is whether or not the injury arose out of and in the usual course of the employer's business.

An injury is regarded as arising out of and in the usual course of the employment where the employment exposes the employe in special degree to risk of the injury. Trimble kept an office as a place in which to transact his real estate business. The office was the means which he used to carry on his business. Injuries to an employe while engaged in the work of supplying the means by which the employer carries on his business result from risks to which such employment exposes him and therefore arise out of and in the usual course of the employer's business. Such means may include an office, store, factory, or other structure used for the business purposes of the employer.

We held in Colosimo v. Giacomo, 199 Minn. 600, 273 N. W. 632, that an injury sustained by an employe while excavating under a building in the course of repairs to prepare it for occupancy by the employer as a place to operate a beer tavern arose out of and in the usual course of the employer's business. Likewise, we have held that injuries to an employe arose out of and in the usual course of the employer's business where the employe was injured while performing work in maintaining the employer's place of business, such as painting a store front, Gahr v. Strout, 179 Minn. 395, 229 N. W. 340; painting a smokestack of a power plant, Fuller v. Northern States Power Co. 189 Minn. 134, 248 N. W. 756; and washing windows of a building occupied by a merchant, Carter v. W. J. Dyer & Bro. 186 Minn. 413, 243 N. W. 436.

Of course the cited cases did not involve the question whether an injury occurring to an employe while engaged in moving the employer's property with which he conducted his business from one location to another arose out of and in the usual course of the employer's business. Moving is an incident of maintaining an office. In Pace v. Appanoose County, 184 Iowa, 498, 168 N. W. 916, the work of moving the instrumentalities with which an employe performed his work was held to be a part of such work and

an injury sustained by the employe while moving an engine from one location where it had been used to another where it was intended to be used arose out of and in the usual course of the employer's business. That case involved the moving of instrumentalities owned by the employe. Here the property moved belonged to the employer. But the ownership of the property moved is not important. The controlling fact is that the moving was in furtherance of the employer's business.

The moving was as Trimble, himself, testified simply an incident in the general carrying on of his business. The evidence sustains the finding that the injury arose out of and in the usual course of the employer's business.

■ Where it appears that the commission considered evidence excluded by the referee, the error, if any, of the referee is harmless. All that the law requires is that the commission should consider the evidence. Cieluch v. Economy Tire & Battery Co. 207 Minn. 1, 290 N. W. 302.

The respondents are allowed an attorneys' fee of $100 in addition to the costs and disbursements taxable in this court.

Affirmed and writ quashed.

