## MABEL FINN v. PHILLIPPI BROTHERS AND OTHERS. ANTONSEN TRUCKING COMPANY AND ANOTHER, RELATORS.[1]

October 24, 1941.

No. 32,863.

[1]Reported in 300 N. W. 441.

*J. Frank Boyles,* for relators.

*J. Arthur Bensen,* for respondent Mabel Finn.

*Reynolds & McLeod,* for Phillippi Brothers, McCree & Company, Liberty Mutual Insurance Company, and Employers Mutual Liability Insurance Company, respondents.

HOLT, JUSTICE.

*Certiorari* to review a decision of the industrial commission awarding workmen's compensation.

Mabel Finn petitioned the industrial commission to award compensation to her and a minor child for the death of her husband, Lloyd Finn, from injuries sustained June 20, 1938, in an accident arising out of and in the course of his employment. Death resulted the next day. The petition is drawn as if there were only one employer, while in the caption three different concerns are designated as her husband's "Employer," *viz.,* Phillippi Brothers, Antonsen Trucking Company, and McCree & Company, and three different compensation insurance companies are named "Insurer," *viz.,* Employers Mutual Liability Insurance Company, Maryland Casualty Company, and Liberty Mutual Insurance Company.

The Antonsen Trucking Company and the Maryland Casualty Company answered jointly, specifically denying that Antonsen Trucking Company was Finn's employer at the time of the accident; admitted that the Maryland Casualty Company was the general compensation insurance carrier for Antonsen Trucking Company on June 20, 1938, but alleged that on the work then being done under the contract between McCree & Company and Antonsen Trucking Company the former agreed to and did carry the insurance for Finn and the drivers of the Antonsen Trucking Company's trucks with the Liberty Mutual Insurance Company.

McCree & Company, Phillippi Brothers, and Liberty Mutual Insurance Company answered jointly, denying that Lloyd Finn was in the employ of either McCree & Company or Phillippi Brothers at the time of his injury, admitting that the Liberty Mutual Insurance Company was the insurer of McCree & Company for compensation liability and likewise for Phillippi Brothers under a special risk permit. Employers Mutual Liability Insurance Company answered separately, but, since no one complains of the action of the commission in dismissing it, no further notice of that insurer need be taken. Hereinafter, McCree & Company will be referred to as the McCree, Phillippi Brothers as the Phillippi, Antonsen Trucking Company as the Antonsen, the Maryland Casualty Company as the Maryland, and Liberty Mutual Insurance Company as the Liberty.

It appears without dispute that the McCree and the Phillippi jointly entered into a contract with the state highway department for the construction of two trunk highway projects. The one where Finn's injury occurred was the trunk highway project between Anoka and Elk River. The contract is dated September 20, 1937. On November 1, 1937, the McCree entered into a written contract with the Antonsen to do the trucking on the Anoka-Elk River project. In this contract are these provisions bearing on the present controversy:

"The party of the second part [the Antonsen] have trucks equipped with dump bodies and desire to haul the bituminous mixture from the plant of the party of the first part [the McCree] and deposit same in the finishing machine where it is to be laid on the road * * *.

"On the Anoka-Elk River job, the party of the second part desires to haul the binder soil, clay and gravel to be put in stock piles for later mixing in a stabilizing plant and then haul the stabilized gravel either on the road or into a spreader belonging to the party of the first part. They also desire to haul the gravel for road mix, depositing same on the road, and to haul the plant

mix bituminous material, depositing same in the finishing machine belonging to the party of the first part."

Then the contract provides that on the Anoka-Elk River job the Antonsen will be paid for certain hauling five cents per ton mile, and for other six and one-half cents. The contract also has these provisions:

"The party of the first part will pay the payroll for drivers and other labor; also the workmen's compensation insurance, the social security taxes and possibly other items of expense, if such other items not above listed, are agreeable to the party of the second part; deducting any and all monies so paid for the account of the party of the second part, from monies due them. * * *

"The party of the second part will have charge of the drivers of their trucks, even though they are carried on the payroll of the party of the first part, and may hire, discharge and direct them as they wish, being governed by the specifications and regulations of the State Highway Department."

One provision in the contract is that the Antonsen shall be considered an independent contractor.

A mere reading of the contract shows that Lloyd Finn was the Antonsen employe when he was fatally injured. But we have also the testimony of Mr. Antonsen (one of the two partners of the concern) that they had an arrangement with Truck Drivers Union No. 544 of Minneapolis whereby the union sent out to the Antonsen garage the drivers the Antonsen ordered. These drivers took the trucks at the garage and drove to the Antonsen office shanty at Elk River, where the Antonsen foreman took charge of the drivers and trucks, keeping the time of the drivers and looking after the repair of the trucks. It appears that the Antonsen kept the time the drivers occupied in going to and returning from the office separately, and paid for that time direct to the drivers. The time of the drivers kept by the foreman at the job was turned in to the office of the McCree each working day. The McCree made up time sheets for pay rolls, including their own men on the job

as well as those of their subcontractors. Under the rules of the highway department, the McCree was required to file a copy of these time sheets with the department, another with Federal Public Roads Administration, and one with the industrial commission. Mr. Aldridge, the other partner of the Antonsen, who was also the local agent of the Maryland, testified that they had paid the drivers for the time occupied in driving the trucks to and back from the job, "where there was no question about the employment—whose employes the drivers were."

There is here no occasion to resort to evidence in respect to the right of control over Finn on June 20, 1938, in order to ascertain in whose employ he then was. Necessarily, as between the contractor and subcontractor in a job of the character in question, the employes of the subcontractor had to obey the directions of the foreman in charge of the job, in this instance the McCree foreman. And the contract itself indicates that this foreman was to designate the material the truckers were to haul and where to dump it. That this foreman in one instance discharged and paid off an incompetent truck driver is of no significance, for Mr. Antonsen was there and apparently approved. Of the cases cited by relators, only Angell v. White Eagle O. & R. Co. 169 Minn. 183, 210 N. W. 1004, involved a written contract between the parties. There the conclusion was reached that under that contract Angell became the employe of the White Eagle Oil & Refining Company.

It was admitted in the joint answer of the Antonsen and the Maryland that the latter was the workmen's compensation insurer of the former. There is no evidence that the Maryland audited the Antonsen pay roll to ascertain any premium due it. The Liberty never issued a workmen's compensation policy to the Antonsen, nor is there any evidence that it was requested so to do. But the Maryland contends that because the Liberty audited the McCree pay rolls to ascertain the premium it was entitled to collect and did collect, not only for the McCree employes but also for the Antonsen, the Liberty became in law the insurer for the Antonsen; and that it is estopped to deny it. It does not seem to

us that as between these two insurance carriers there can be any basis for estoppel or shifting of liability. There is no evidence that the Maryland knew of or relied on what the Liberty did or failed to do in the premises. If the Maryland did not get all of the premium on the policy it issued to the Antonsen, it still has a legal claim against the Antonsen therefor. And if the Liberty collected insurance premiums from the McCree upon the Antonsen pay roll, which its policy does not cover, no doubt the McCree may ask for its return, and the Antonsen will be entitled thereto if it was deducted from their earnings on the job.

Counsel for respondents the McCree and the Liberty maintain that there was no separation of risk on the part of relators so that the Maryland became the insurer of the Antonsen drivers only when not on the Anoka-Elk River job. Such separation may be had with the consent of the industrial commission. Mason St. 1940 Supp. § 4272-2. There was no consent in this case. Skuey v. Bjerkan, 173 Minn. 354, 217 N. W. 358. Nylund v. Thornberg, 209 Minn. 79, 295 N. W. 411, also cited by respondents, is hardly in point, for in the case at bar, by the admission in the joint answer of relators, the Maryland was the general compensation insurer of the Antonsen when the latter's employe Finn, on June 20, 1938, was fatally injured on the Anoka-Elk River job.

The respondent Mabel Finn raises no objection to the decision of the commission, so there is no occasion to consider the primary and secondary liability of the parties to this proceeding.

The writ is discharged and the decision is affirmed. The respondent Mabel Finn may tax $100 attorney's fees in this court.