ALMA LARSON v. E. T. Le MERE, *d. b. a.* Le MERE'S
STEEPLE JACK SERVICE.
KRAFT CHEESE COMPANY AND ANOTHER, RELATORS.[1]

May 11, 1945.

No. 33,973.

[1]Reported in 18 N. W. (2d) 696.

26

*Snyder, Gale, Hoke, Richards & Janes, L. N. Foster, E. A. Linnee,* and *Nathan A. Cobb,* for relators.

*John A. Goldie,* for respondent Alma Larson.

*G. P. Mahoney* and *John S. Morrison,* for respondent E. T. Le Mere, *d. b. a.* Le Mere's Steeple Jack Service.

*Reynolds & McLeod* and *W. R. Selb,* for respondents Hutchinson Produce Company and Standard Accident Insurance Company.

*J. Frank Boyles* and *S. S. Larson,* for respondents Peter and Eldred Miller and United States Fidelity & Guaranty Company.

MATSON, JUSTICE.

*Certiorari* to review an order of the industrial commission awarding petitioner, hereinafter called claimant, as widow of Arthur Larson, compensation against relator Kraft Cheese Company as employer and its insurer. The parties having stipulated that the accidental injury arose out of and in the course of the employment, the sole question was to determine by whom the decedent, Arthur Larson, was employed. The referee, affirmed by a majority of the industrial commission, in finding against relators, dismissed the petition as against Le Mere and the other employers and their insurers.

After issuance of the writ of *certiorari,* the employer-respondents, Hutchinson Produce Company and its insurer, Peter and Eldred Miller and their insurer, and Le Mere, moved to dismiss the writ as to them on the following grounds: (1) That relators' petition was defective; (2) that relators and the moving respondents were not adversaries; (3) that relators were not aggrieved by the dismissal; (4) that relators' assignment of errors was limited to the finding against the Kraft Cheese Company; (5) and that this court had therefore no jurisdiction to review the findings of fact and order of dismissal as to the moving respondents, because the time for claimant to obtain a writ had expired. By order of this court dated January 12, 1945, the motions were "denied without prejudice to their renewal at the time of the argument on the merits." The motions were renewed, except as to the ground that relators' petition was defective.

■ Claimant's deceased husband, if not an employe of the cheese company, was necessarily an employe of one of the respondent-employers now seeking to discharge the writ, and the interest of such employers was therefore in conflict with the interest of relators, who could prevail only by demonstrating, as a matter of law, that the real employer was one of the respondents. In a very real sense, relators and the employer-respondents were adversaries as to any modification of the award. Any party who would be prejudiced by a reversal or modification of an order, award, or

judgment is an adverse party on whom a writ of *certiorari* or notice of appeal must be served. Rendahl v. Hall, 160 Minn. 502, 200 N. W. 744, 940; Kells v. Nelson-Tenney Lbr. Co. 74 Minn. 8, 76 N. W. 790; 1 Dunnell, Dig. & Supp. § 312; 2 Wd. & Phr. (Perm. ed.) Adverse Party, p. 555. The respondents were all adverse parties, and as such it was essential to serve the writ upon each of them to effect a valid review. Perkovich v. Oliver I. Min. Co. 171 Minn. 519, 214 N. W. 795. See, Kemerer v. Mock, 198 Minn. 316, 319, 269 N. W. 832, 834.

The case of Merrill v. St. Paul City Ry. Co. 170 Minn. 332, 212 N. W. 533, which did not involve the dismissal of an appeal, is simply an action in negligence wherein the absolving of one defendant from liability did not necessarily fix liability as to the other and vice versa. Furthermore, the Merrill case (and also Hardware Mut. Cas. Co. v. Anderson, 191 Minn. 158, 253 N. W. 374) was overruled by this court in American Motorists Ins. Co. v. Vigen, 213 Minn. 120, 124-126, 5 N. W. (2d) 397, 399-400, 142 A. L. R. 722.

The contention that the writ should be dismissed as to the respondents because relators would not thereby be aggrieved is without merit. Obviously, it is not necessary that relators be aggrieved by the dismissal in order to constitute the respondents adverse parties.

■ Minn. St. 1941, § 176.62 (Mason St. 1927, § 4321), provides:

"The supreme court, on review taken under section 176.61, shall have and take *original jurisdiction* and may reverse, affirm, or modify the award or order of disallowance reviewed and enter such judgment as may be just and proper; * * *." (Italics supplied.)

The word *original* in the above statute did not and could not enlarge the jurisdiction of this court beyond its appellate jurisdiction (and such original jurisdiction in *remedial* cases as prescribed by law) conferred and limited by Minn. Const. art. 6, § 2. Lading v. City of Duluth, 153 Minn. 464, 190 N. W. 981. The word, however, is not without meaning. In using the word *original*, the legislature obviously intended to emphasize that this court should

have jurisdiction to review the entire proceedings below from their very origin or inception as to any issue raised by an assignment of error, and this jurisdiction so conferred necessarily extended to any adverse party or parties involved in the adjudication of such issue at any stage of the proceedings.

The writ here brought all parties before this court for review, and at no time was jurisdiction lost. It was not necessary for the claimant, who had received a satisfactory award against the relators and was therefore not aggrieved by the findings of the industrial commission, to obtain a writ of *certiorari* herself solely to protect her interests as against the other employers and their insurers in the event of a reversal.

■ In determining whether or not the facts and the reasonable inferences to be drawn from them sustain the findings of the industrial commission that decedent was employed by the cheese company, the evidence must be reviewed in the light most favorable to such findings. Burke v. B. F. Nelson Mfg. Co. 219 Minn. 381, 18 N. W. (2d) 121; Kiley v. Sward-Kemp Drug Co. 214 Minn. 548, 9 N. W. (2d) 237; 6 Dunnell, Dig. & Supp. § 10426.

The cheese company rented the building at Hutchinson from the Hutchinson company pursuant to a lease which took effect the month following the completion of certain permanent improvements to be made by the lessor. These improvements were completed in May 1943, and the lease became effective June 1. After this latter date, the lessor was required to maintain only the structural portions of the building, such as roof, walls, and foundation. The cheese company was authorized "to make such alterations and improvements as in lessee's sole judgment are required."

The Millers, under a contract with the Hutchinson company, performed the permanent improvement work required of the lessor by the lease. This contract involved no painting, and the evidence clearly sustains the findings that Le Mere was not a subcontractor of the Millers.

The cheese company, shortly before it commenced, in the latter part of September 1943, the alteration and improvement work

authorized by the lease, through E. L. Kuhn, its superintendent of construction, entered into a written agreement with E. T. Le Mere, *d. b. a.* Le Mere's Steeple Jack Service, whereby the latter agreed to furnish workmen's compensation and public liability insurance and labor, equipment, and materials (Le Mere also to pay taxes) required to paint the exterior and interior of the building (as instructed by Kuhn from time to time) on a basis of $2.50 per hour per man, subject to a cost-plus charge of 10 percent for profit and overhead on other incidental work, together with a daily expense allowance of three dollars per man. Five dollars per day additional was allowed for the expenses of operating the spray machine while in use. For financing, Le Mere was allowed a weekly drawing account of $375. By express reservation, it was provided that the said *"superintendent of construction may discharge any worker who does not competently carry on his work."* This contract,[2] accepted by Le Mere as drawn by Kuhn, makes no reference

---

[2] "Purchase Order
"Job No. :————

"To:
Le Mere's Steeple Jack Service
509 South Seventh Street
Minneapolis, Minnesota

"Furnish labor, equipment, and insurance and other materials as required to *paint exterior* of KRAFT CHEESE COMPANY building at Hutchinson, Minnesota *as instructed* from time to time by our superintendent, all on a basis of $2.50 per hour per man which shall include labor, insurance, equipment and taxes. All other charges incidental to the job shall be at cost plus 10% for overhead and profit. Contractor shall furnish certificate of insurance covering workman's compensation and public liability. $3.00 per day expenses for each man to be paid by Hutchinson Produce Company, $375.00 per week drawing account payable Friday of each week.

"Expense of spray machine while in operation, $5.00 per day, air to be furnished by Hutchinson Produce Company.

"Under the above conditions, the Hutchinson Produce Company reserves the privilege that their superintendent of construction may discharge any worker who does not competently carry on his work. This will also include interior work.

"E. T. Le Mere
"E. L. Kuhn"

to the cheese company but is expressly in the name of the Hutchinson company. The evidence sustains the industrial commission's findings that Kuhn had no authority to represent the Hutchinson company and that the real contracting party was the cheese company. At best, the Hutchinson company was only an agent of the latter.

The real question narrows down to the determination of whether Le Mere was an independent contractor and as such the employer of decedent, or whether he was merely an employe of the cheese company so as to constitute the decedent in turn the employe of the latter. Byhardt v. Ballord, 209 Minn. 391, 296 N. W. 504; Bolin v. Scheurer, 210 Minn. 15, 297 N. W. 106.

Kuhn first met Le Mere at Albany, Minnesota, where the latter had taken from the general contractor a subcontract for painting a building occupied by the cheese company. Kuhn had no part in the negotiation of the Albany contract. It was on this occasion, however, that the agreement was made which resulted in the written agreement involved herein. Le Mere for some years had operated a steeple-jack service with an office in Minneapolis, but for a year or two prior to the Hutchinson job he had taken a few painting contracts.

As indicative of, but not necessarily controlling as to, Le Mere's status as an independent contractor, we have the fact that he fixed the wages and paid the men directly;[3] that he furnished the necessary equipment and tools;[4] that he was not himself a journeyman painter;[5] that he was employed to do a specific piece of work;[6] that prior thereto he had worked as an independent contractor at Albany;[7] that he carried and furnished workmen's compensation in-

[3]Lemkuhl v. Clark, 209 Minn. 276, 296 N. W. 28.

[4]Ledoux v. Joncas, 163 Minn. 498, 204 N. W. 635; Lynch v. Hutchinson Produce Co. 169 Minn. 329, 211 N. W. 313; Nesseth v. Skelly Oil Co. 176 Minn. 373, 223 N. W. 608.

[5]Rick v. Noble, 196 Minn. 185, 264 N. W. 685.

[6]Angell v. White Eagle O. & R. Co. 169 Minn. 183, 210 N. W. 1004; Wass v. Bracker Const. Co. 185 Minn. 70, 240 N. W. 464; Lemkuhl v. Clark, *supra*.

[7]Bolin v. Scheurer, 210 Minn. 15, 297 N. W. 106.

surance;[8] that he hired the painters;[9] and that he deducted the federal withholding tax and unemployment insurance tax.[10]

The real test, however, "as to whether a person is an independent contractor or an employe is whether the asserted employer, under his arrangement with the other party, has or has not any authoritative control of the latter with respect to the manner and means in which and by which the details of work are to be performed" (Nesseth v. Skelly Oil Co. 176 Minn. 373, 374, 223 N. W. 608) as distinguished from the right which every owner or general contractor has to supervise and coördinate the general work. Finn v. Phillippi Bros. 211 Minn. 130, 300 N. W. 441; Erickson v. Kircher, 168 Minn. 67, 209 N. W. 644; 6 Dunnell, Dig. & Supp. § 10395.

In applying the test of right of control, we first turn to the contract to determine if the right exists as distinguished from the mere unauthorized exercise of such right or the mere fact of actual interference with control. Bosel v. Henderson Holding Co. 167 Minn. 72, 208 N. W. 421; 6 Dunnell, Dig. & Supp. § 10395. The contract expressly reserves the right to discharge any employe for incompetency. It also definitely provides that the work must be performed "as instructed from time to time" by Kuhn, and this provision is not limited or clarified by any statement of specifications. Nothing is said as to the extent of the interior painting, the number of coats to be applied, or the time of painting and completion. Aside from the specific rights reserved to the employer and the rate of pay per hour, the contract is so indefinite and uncertain that it becomes important to consider the practical construction given to the contract by the parties themselves. First Nat. Bank v. Jagger, 41 Minn. 308, 43 N. W. 70; 12 Am. Jur., Contracts, § 249. As to the right of control, the evidence in respect to the practical working relationship between Kuhn and Le Mere

---

[8] Angell v. White Eagle O. & R. Co. and Nesseth v. Skelly Oil Co. *supra;* Finn v. Phillippi Bros. 211 Minn. 130, 300 N. W. 441.

[9] Byhardt v. Ballord, 209 Minn. 391, 296 N. W. 504; Lynch v. Hutchinson Produce Co., Rick v. Noble, and Nesseth v. Skelly Oil Co. *supra.*

[10] Finn v. Phillippi Bros. *supra.*

sustains the finding that Le Mere was merely an employe of the cheese company, and that he was scarcely more than a foreman or a conduit for the transmittal of Kuhn's orders. Over the protests of Le Mere, Kuhn ordered and effected the discharge of one of the workmen, Peter Warhole, not because of incompetency, but because he did not approve of Warhole's personal habits. Kuhn did not like Le Mere's choice of foreman and compelled a change. It is of no great significance that Kuhn did not in these matters deal directly with the men. It is usually customary to deal with workmen through the subordinate next in line. Kuhn not only prescribed *where* and *when* the painting should be done, but also *how*. He ordered that there should be no drinking on or off the job by the men while in Hutchinson or the surrounding towns, because it might give *him* a bad name. Clearly, he regarded the crew as his crew of men and not that of Le Mere. On a number of occasions he ordered the work stopped and later started again regardless of the convenience or desires of Le Mere. The right which he possessed to discharge workmen and the manner in which this right was actually exercised, coupled with his actual control over the work even as to *how* it should be done, as to how the men should conduct themselves, and when the work should be entirely stopped and again commenced, sustains an inference that Le Mere was a mere employe and that the agreement could be terminated at will. Kuhn's supervision pertained to all details of the work and was not limited to such general control as would be justified on the part of one interested only in the result or in coördinating the work with the current operation of the plant. The agreement was scarcely more than a device to fix the rate of Le Mere's hire and the rental for the use of his equipment. Where the finding of the commission has reasonable support in the evidence, it will not be set aside even if the evidence would also sustain a contrary finding. Rick v. Noble, 196 Minn. 185, 264 N. W. 685.

Larson, the decedent, was hired and paid by Le Mere as an employe of the cheese company. "One who is hired and paid by an employe to help in performing the employer's work with the

34

latter's consent and subject to his control as to the details of the work is an employe of the employer." Byhardt v. Ballord, 209 Minn. 391, 394, 296 N. W. 504, 505. See, Bolin v. Scheurer, 210 Minn. 15, 297 N. W. 106.

The writ of *certiorari* is discharged and the decision of the commission is affirmed, with an allowance to claimant of $250 attorney's fees and costs in this court.

