STATE OF MINNESOTA

IN SUPREME COURT

A22-0098

Court of Appeals

Anderson, J.
Dissenting, McKeig, Moore, III, JJ.
Took no part, Procaccini, J.

Jacqueline Blakey,

Appellant,

Jerry Blakey,

Filed: November 1, 2023
Appellant,
Office of Appellate Courts

vs.

Javonda Jones,

Respondent,

Gina Alexander, et al.,

Respondents.

_____

Bruce Jones, Elle E. Ottaviani, Faegre Drinker Biddle & Reath LLP, Minneapolis, Minnesota, for appellants.

Erik F. Hansen, Elizabeth M. Cadem, Burns & Hansen, P.A., Minneapolis, Minnesota; and

Christopher M. Banas, Banas Family Law, P.A., Lilydale, Minnesota, for respondents Gina Alexander, et al.

_____

1

S Y L L A B U S

To perfect their appeal, appellants were not required to serve a notice of appeal on a guardian ad litem who was a party in the third-party custody proceeding in the district court but was discharged before the appeal, because the discharged guardian ad litem was no longer a "party" within the meaning of Rule 103.01 of the Minnesota Rules of Civil Appellate Procedure and the guardian ad litem's discharge was not itself the subject of the appeal.

Reversed and remanded; appeal reinstated.

O P I N I O N

ANDERSON, Justice.

The issue presented here is whether Rule 103.01, subdivision 1, of the Minnesota Rules of Civil Appellate Procedure requires service of a notice of appeal on a guardian ad litem who was discharged after the district court issued the order from which the appeal was taken. In April 2020, appellants Jacqueline and Jerry Blakey filed a petition for permanent third-party custody of their great niece, K.J. Respondent Javonda Jones, K.J.'s mother, requested that the district court deny the Blakeys' petition. The district court appointed a guardian ad litem. After a hearing and separate paternity proceeding, a referee approved a stipulation of shared joint legal and physical custody of K.J. by Jones and K.J.'s father, and the court later dismissed the Blakeys' petition for third-party custody after an evidentiary hearing. After dismissing the Blakeys' petition for third-party custody, the district court discharged the guardian ad litem, after which the Blakeys appealed the dismissal of their petition. The court of appeals dismissed the Blakeys' appeal for failure

2

to timely serve the guardian ad litem with a notice of appeal under Rule 103.01, subdivision 1, of the Minnesota Rules of Civil Appellate Procedure. Because we conclude that the guardian ad litem was no longer a party to the action once discharged by the district court, and Rule 103.01, subdivision 1, does not require service of a notice of appeal on a *former* party whose dismissal or discharge is not itself the subject of the appeal, we reverse.

**FACTS**

K.J. was born to Javonda Jones on January 17, 2017. Andrew Alexander was adjudicated as K.J.'s father in a separate paternity action in 2019.

In April 2020, the Blakeys—K.J.'s paternal great aunt and uncle—filed an ex parte petition for temporary third-party custody of K.J. based on their concern that Jones had neglected K.J.'s special needs and severe medical conditions. The Blakeys named Jones as the sole respondent in the action. The district court granted the Blakeys' ex parte petition, awarded the Blakeys temporary sole physical and legal custody of K.J., and granted Jones parenting time with K.J. twice per week.

The Blakeys filed a petition for permanent third-party custody of K.J. in April 2020 based on the same allegations in their ex parte motion. Alexander and his parents, Larry and Gina Alexander—K.J.'s paternal grandparents—intervened in the action in May 2020. The district court appointed a guardian ad litem in May 2020 to represent the interests of K.J., ordering that the guardian ad litem "shall" be a party. The order naming the guardian ad litem stated that the "appointment in this case shall automatically expire" after 6 months but could be extended. The district court later extended the guardian ad litem's

3

appointment, stating that the "appointment w[ould] expire pursuant to further order of the Court."

In July 2020, after a hearing, the district court granted Jones sole legal and physical custody of K.J., granted the Blakeys unsupervised visitation with K.J. every weekend, and granted both the Blakeys and the Alexanders access to K.J.'s medical records. The district court also determined that there was a sufficient basis to proceed, based on the facts the Blakeys alleged in their custody petition, and determined that a full evidentiary hearing was necessary.

The guardian ad litem issued a report in September 2020 and recommended that Jones retain sole legal and physical custody of K.J. In February 2021, a referee approved a stipulation between the parents modifying custody, after which Jones and K.J.'s father each shared joint legal and physical custody. The guardian ad litem issued an updated report in August 2021 and recommended that K.J.'s parents continue to share joint legal and physical custody, reporting that they were administering K.J.'s medications as prescribed and that K.J.'s medical conditions had greatly improved. Shortly after issuing the updated report, the guardian ad litem informed the parties that she would "no longer be with the Guardian ad Litem Program" when the litigation proceeded to the evidentiary hearing, so her supervisor, Laura Miles, would attend in her place.

An evidentiary hearing took place in September 2021, and all parties were present, including Miles on behalf of the Guardian ad Litem Program. On November 24, 2021, the district court dismissed the Blakeys' petition for third-party custody, concluding that they "failed to establish" any of the statutory factors required to grant third-party custody.

4

In December 2021, the district court discharged the Guardian ad Litem Program and the assigned guardian ad litem. The district court stated that the guardian ad litem had "fulfilled the duties and obligations assigned by the Court."

The Blakeys filed a timely pro se appeal of the dismissal of their custody petition in January 2022. The court of appeals stayed the appeal pending mediation, but mediation failed to resolve the parties' dispute. The stay was lifted in June 2022. On September 8, 2022, the Blakeys, still appearing pro se, served the Guardian ad Litem Program and Miles with a notice of appeal.

The Alexanders moved to dismiss the Blakeys' appeal on the ground that they failed to timely serve the guardian ad litem with the notice of appeal within the 60-day appeal period. *See* Minn. R. Civ. App. P. 104.01, subd. 1. The Alexanders argued that the guardian ad litem was an adverse party, and consequently, the guardian ad litem must be served with the notice of appeal under Rule 103.01, subdivision 1, of the Rules of Civil Appellate Procedure. The Blakeys filed a pro se response to the motion to dismiss, arguing that the guardian ad litem was not an adverse party because she served in an advisory role, she did not participate in many hearings, and she did not weigh in on all decisions. The Blakeys conceded, however, that "there are several legal issues identified in [their] appeal that[] specifically relate to the guardian ad litem," such as her failure to certify written reports and fulfill discovery requests, including after the district court ordered her to procure discovery documents.

The court of appeals dismissed the Blakeys' appeal. *Blakey v. Jones*, No. A22-0098, Order (Minn. App. filed Nov. 1, 2022). The court of appeals explained that, under

5

Rule 103.01 of the Rules of Civil Appellate Procedure, an appeal is made by filing a notice of appeal and serving the notice of appeal on all adverse parties within the appeal period. *Blakey*, Order at 2. The court of appeals concluded that the guardian ad litem was a "party" because her appointment in this case was mandatory, the district court specifically made the guardian ad litem a party to the litigation, and the district court's discharge of the guardian ad litem after dismissing the Blakeys' petition "d[id] not affect the [guardian ad litem]'s party status on appeal." *Id.* at 3. The court of appeals also concluded that the guardian ad litem was an adverse party under Rule 103.01, subdivision 1, because she had recommended that K.J.'s parents share custody, which conflicted with the Blakeys' request for third-party custody, and reversing the district court's order would prejudice the position of the guardian ad litem. *Id.* at 4. Consequently, because it was undisputed that the Blakeys did not serve the guardian ad litem before the appeal period expired and because timely service of a notice of appeal on adverse parties is a jurisdictional requirement, the court of appeals dismissed the appeal. *Id.* at 4–5.

The Blakeys retained counsel and filed a petition for review, and we granted the petition.[1]

## ANALYSIS

At issue here is whether Rule 103.01, subdivision 1, of the Minnesota Rules of Civil Appellate Procedure requires service of a notice of appeal on a guardian ad litem who was a party in the district court but was discharged after the district court issued the order from

---

[1] Jones did not file a brief before our court.

6

which the appeal was taken. The Blakeys contend that the discharged guardian ad litem is not a "party" for purposes of Rule 103.01, subdivision 1, and that they were not required to serve the guardian ad litem with a notice of appeal. The relevant facts are not in dispute, and this case presents a question regarding the interpretation of the Minnesota Rules of Civil Appellate Procedure, which we review de novo. *See Stern 1011 First St. S., LLC v. Gere*, 979 N.W.2d 216, 220 (Minn. 2022).

## A.

We first address an argument by respondents that the Blakeys forfeited their argument before our court. The Alexanders assert that the Blakeys only argued before the court of appeals that the guardian ad litem was not *adverse* to the Blakeys, but the Blakeys now argue that the guardian ad litem was not a *party* at the time of their appeal. The Alexanders therefore argue that the Blakeys' argument is forfeited, because the reliance on the district court's discharge of the guardian ad litem is a new argument not made in the court of appeals. The Blakeys contend that they did raise the party status of the guardian ad litem in the court of appeals. Alternatively, the Blakeys argue that we can review forfeited issues in the interests of justice if neither party will be prejudiced by our review.

In the Blakeys' responsive memorandum before the court of appeals, the Blakeys stated that "it is disputable whether the guardian ad litem assigned to the district court case is an actual party to the action," but also explained that "the most prevailing question is whether or not the guardian ad litem is an adverse party to the Appellant's appeal case." The remainder of the Blakeys' memorandum focused on whether the guardian ad litem qualified as adverse. The Blakeys' argument here, however, focuses almost exclusively

7

on whether the guardian ad litem is a party to the appeal. Consequently, the Blakeys' argument before our court presents a new question not adequately argued and explained before the court of appeals. *See State v. Myhre*, 875 N.W.2d 799, 806 (Minn. 2016) (stating that an appellate court may deem issues raised in a brief, but "not adequately argued or explained," forfeited on appeal).

Generally, issues not raised in the court of appeals are forfeited before our court. *See Annis v. Annis*, 84 N.W.2d 256, 261–63 (Minn. 1957) ("The general rule . . . is that litigants are bound in this court by the theory or theories, however erroneous or improvident, upon which the action was actually tried below."). This rule, however, is not ironclad, and we have "the authority to take any action 'as the interest of justice may require.' " *Putz v. Putz*, 645 N.W.2d 343, 350 (Minn. 2002) (quoting Minn. R. Civ. App. P. 103.04). Our court "may base its decision upon a theory not presented to or considered" by the court of appeals when "the question raised for the first time on appeal is plainly decisive of the entire controversy on its merits, and where, as in [a case] involving undisputed facts, there is no possible advantage or disadvantage to either party in not having had a prior ruling." *Holen v. Minneapolis-St. Paul Metro. Airport Comm'n*, 84 N.W.2d 282, 286 (Minn. 1957) (emphasis omitted). "Factors favoring review include: the issue is a novel legal issue of first impression; the issue was raised prominently in briefing; the issue was 'implicit in' or 'closely akin to' the arguments below; and the issue is not dependent on any new or controverted facts." *Watson v. United Servs. Auto. Ass'n*, 566 N.W.2d 683, 688 (Minn. 1997).

8

These factors favor our review of the Blakeys' argument regarding the discharge of the guardian ad litem. Notably, we are presented here with an issue of first impression. Although we have held that a guardian ad litem who is a party must be served with a notice of appeal in termination-of-parental-rights litigation, *In re Welfare of J.R., Jr.*, 655 N.W.2d 1, 6 (Minn. 2003), we have not extended that precedent to custody appeals. Moreover, the facts in *J.R., Jr.* did not present us with the question we consider here—whether a guardian ad litem who was a party before the district court but was *discharged* before appeal must be served with a notice of appeal as an "adverse party" under Rule 103.01, subdivision 1. The Blakeys raised the issue of whether the guardian ad litem is a party in their petition for review and in both their principal and reply briefs to our court. The Alexanders also addressed the issue in their brief to our court. Furthermore, the overarching issue before the court of appeals—whether the Blakeys were required to serve the guardian ad litem to perfect their appeal—is the same issue now before us. The Blakeys' argument that the guardian ad litem is not a party at all is "closely akin to" their argument to the court of appeals that the guardian ad litem was not an "adverse" party. Finally, there are no disputed facts that must be resolved to decide the legal issue here. The parties agree that the guardian ad litem was a party when the district court issued its order, that the district court later discharged the guardian ad litem, and that the Blakeys did not serve the guardian ad litem with notice of their appeal within the required time period. Accordingly, we proceed to address the merits of this appeal.

9

B.

We now turn to the question of whether Rule 103.01, subdivision 1, of the Minnesota Rules of Civil Appellate Procedure requires service of a notice of appeal on a guardian ad litem who was discharged after the district court issued the order from which the appeal was taken.

"When construing procedural rules, we look to the plain language of the rule and its purpose." *In re Welfare of S.M.E.*, 725 N.W.2d 740, 742 (Minn. 2007). Rules are read as a whole, and each section is interpreted "in light of the surrounding sections." *State v. Underdahl*, 767 N.W.2d 677, 682 (Minn. 2009) (internal quotation marks omitted) (quoting *Am. Fam. Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 277 (Minn. 2000)). In interpreting procedural rules, we also have a policy "to preserve the right to appeal, simplify practice, and lessen confusion." *S.M.E.*, 725 N.W.2d at 742; *see also Huntsman v. Huntsman*, 633 N.W.2d 852, 855 (Minn. 2001). But our court applies "the plain language of the rule unless we determine that the language is subject to multiple reasonable interpretations and therefore is ambiguous." *City of Waconia v. Dock*, 961 N.W.2d 220, 225 (Minn. 2021).

Rule 103.01, subdivision 1, provides that "[a]n appeal shall be made by filing a notice of appeal with the clerk of the appellate courts and serving the notice on the adverse party or parties within the appeal period." As we have previously explained, "failure to abide by the rules of procedure deprives this court of jurisdiction to hear the appeal." *J.R., Jr.*, 655 N.W.2d at 3. There is no dispute that the Blakeys did not serve the guardian ad litem within the appeal period. Accordingly, the Blakeys' appeal was perfected only if the

10

guardian ad litem was not an "adverse party" within the meaning of Rule 103.01, subdivision 1.

1.

We begin by considering the guardian ad litem's appointment in the case and the effect of the discharge order on the guardian ad litem's status here. To participate in litigation under the circumstances presented here, a guardian ad litem must be appointed by the district court, and a guardian ad litem has no authority beyond that prescribed by the order of the court. *See* Minn. Gen. R. Prac. 903.03 (stating that a guardian ad litem shall only be appointed and serve "upon [a] written order of the court" setting forth the specific duties to be performed). The guardian ad litem must, in some instances, be made a party to an action, as the district court found here. *See* Minn. Stat. § 518.165, subd. 2 (2022). A guardian ad litem may be removed only by order of the court, Minn. Gen. R. Prac. 904.02, after which the guardian ad litem has no further right or duty to participate in the action. The Blakeys argue that a discharge is the functional equivalent of dismissal from the litigation as a party. According to the Alexanders, however, a discharge does not affect the guardian ad litem's party status on appeal.

The Alexanders argue that the guardian ad litem remained an adverse party at the time of the appeal despite the dismissal of the guardian ad litem from the litigation by the district court. Relying on a prior court of appeals decision, the court of appeals likewise concluded that "whether the district court discharges the [guardian ad litem] after issuing a decision does not affect the [guardian ad litem]'s party status on appeal." *Blakey*, Order at 3–4 (citing *Banal-Shepherd v. Shepherd*, 829 N.W.2d 426, 428 (Minn. App. 2013)

11

(concluding that the guardian ad litem who was discharged after the district court issues its decision was a party), *rev. denied* (Minn. May 21, 2013)).

We disagree. We decline to adopt the reasoning of *Banal-Shepherd*. In *Banal-Shepherd*, the court of appeals did not consider the threshold question of whether the guardian ad litem remained a *party* to the litigation at the time of appeal.

The district court dismissed the Blakeys' third-party custody petition. The next week, the district court issued an order that "dischare[d] the Guardian ad Litem Program . . . and the assigned Guardian ad Litem . . . in this matter." Consequently, when the Blakeys filed their January 2022 notice of appeal, the guardian ad litem had no further role in the litigation. The district court determined when it discharged the guardian ad litem that she had "fulfilled the duties and obligations assigned by the Court." Nowhere in its order did the district court preserve for the guardian ad litem or the Guardian ad Litem Program any rights or duties to participate in the litigation. Accordingly, the guardian ad litem no longer had "a right to control the proceedings, make a defense," or "control the lawsuit," and she was no longer a party to the lawsuit. *Party*, *Black's Law Dictionary* (11th ed. 2019).[2] Any legal interest of the guardian ad litem in this dispute was extinguished.

---

[2] We recognize that the definitions of "discharge" and "dismissal" differ in some respects. *See, e.g.*, *Dismissal*, *Black's Law Dictionary* (11th ed. 2019) (defining "dismissal" as "[t]ermination of an action, claim, or charge without further hearing"); *Discharge*, *Black's Law Dictionary* (11th ed. 2019) (defining "discharge" as "[a]ny method by which a legal duty is extinguished"). The distinction here, however, is immaterial. We conclude that a discharged guardian ad litem with no further legal duty in the case is, for purposes of appeal, removed from the action. Consequently, a discharged guardian ad litem has no further role in controlling the lawsuit and is no longer a party to the litigation. *See Party*, *Black's Law Dictionary* (11th ed. 2019).

2.

Having determined that the guardian ad litem was no longer a party to the litigation, we turn to whether the requirement in Rule 103.01, subdivision 1, of the Minnesota Rules of Civil Appellate Procedure, for service of the notice of appeal "on the adverse party or parties," includes service upon the discharged guardian ad litem. We hold, under the plain language of Rule 103.01, subdivision 1, that under the circumstances here, the Blakeys were not required to serve the notice of appeal on the discharged guardian ad litem, because the guardian ad litem was no longer a party to the litigation. It is not enough to assert that some previously advanced position held by the guardian ad litem is imperiled by an appeal; Rule 103.01, subdivision 1, requires service of a notice of appeal on adverse *parties*. Because the guardian ad litem had no further rights or duties, the guardian ad litem was no longer a party to the litigation after discharge, and the Blakeys were not required to serve the guardian ad litem with a notice of appeal.[3]

The Alexanders also argue that, even if the guardian ad litem no longer was a party at the time of the Blakeys' appeal, Rule 103.01, subdivision 1, required the Blakeys to serve the guardian ad litem with a notice of appeal because the guardian ad litem was *formerly* a party. It is undisputed that the guardian ad litem was a party at the time the district court issued the order that is central to this appeal, but the district court had

---

[3] We recognize the important role that a guardian ad litem plays in ensuring that the voice of the child is heard and the best interests of the child are protected and advanced. A district court may certainly decide that the guardian ad litem will not be discharged until the appeal is over, *see J.R., Jr.*, 655 N.W.2d at 1–2, or to modify its appointment order to remove all obligations of the guardian ad litem except to the extent that the guardian ad litem may intervene in appellate proceedings. That did not happen here.

discharged the guardian ad litem by the time the Blakeys appealed the district court's order. According to the Alexanders, the plain language of Rule 103.01, subdivision 1, does not limit the parties that must be served to only current adverse parties to the litigation, so the Blakeys' failure to serve the guardian ad litem, a former party, with a notice of appeal was fatal to their appeal. In contrast, the Blakeys insist that—setting aside circumstances "when the appeal addresses the propriety of a party's dismissal"—only current parties at the time of appeal must be served with a notice of appeal under Rule 103.01, subdivision 1. We agree with the Blakeys.

The plain language of Rule 103.01, subdivision 1, requires service "on the adverse party or parties within the appeal period." Although the rule does not specify whether it refers to only current parties or all parties at any time during the district court proceedings, we conclude that it is clear from the purpose of the rule that it encompasses only those parties that remain in the action on appeal. *S.M.E.*, 725 N.W.2d at 742 ("When construing procedural rules, we look to the plain language of the rule and its purpose."). Generally, that will be limited to current parties, or former parties whose dismissal is being challenged on appeal. We have long held that the purpose of giving notice of an appeal is to alert "every party whose interest in the subject of the appeal is in direct conflict with an affirmance, reversal, or modification of the judgment or order appealed from." *Thayer v. Duffy*, 63 N.W.2d 28, 40 (Minn. 1953). Given this purpose, it would be superfluous to require service on former parties with no legal role in the appeal. Such a requirement would fail to further the purpose of providing notice to persons or entities with a prospective interest in the outcome of an appeal and would unnecessarily run counter to

14

our goal "to preserve the right to appeal, simplify practice, and lessen confusion." *S.M.E.*, 725 N.W.2d at 742. Consequently, this broad reading of the rule is inconsistent with our precedent, and we decline to adopt it. Here, when the guardian ad litem was no longer a party and the guardian ad litem's discharge was not itself being appealed, the guardian ad litem was not among "the adverse party or parties" upon which service was required under Rule 103.01, subdivision 1, of the Minnesota Rules of Civil Appellate Procedure.

### CONCLUSION

For the foregoing reasons, we reverse the decision of the court of appeals.

Reversed and remanded; appeal reinstated.


PROCACCINI, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

15

D I S S E N T

McKEIG, Justice (dissenting).

Because the majority's opinion has the effect of depriving children of a voice and an advocate on appeal of child custody cases, I respectfully dissent.

Guardians ad litem (GALs) fulfill an integral role in our court system—they protect children's best interests and speak to the court on behalf of children. *In re Welfare of J.R., Jr.*, 655 N.W.2d 1, 5–6 (Minn. 2003). GALs are a voice for the voiceless and advocate for one of our most vulnerable populations—children who have been neglected and abused. GALs protect and advocate for children by representing children's best interests and advising the court by conducting investigations into the child's and family's situation, participating in the case and advocating for appropriate community services, maintaining confidentiality, monitoring the child's best interests through the judicial proceedings, and presenting the court with written reports on the child's best interests that include conclusions and recommendations. Minn. Stat. § 518.165, subd. 2a (2022).

In *J.R.*, this court held that failing to timely serve a GAL in a termination-of-parental-rights appeal was a jurisdictional defect that required dismissal of the appeal. 655 N.W.2d. at 6. We recognized that strict application of the procedural rules "may result in some cases not being heard on appeal," but held that "failure to serve [a GAL] is not merely a technical violation of the rules but *truly compromises the system's ability to serve the best interests of the children*." *Id.* at 5–6 (internal quotation marks omitted) (emphasis added). We explained that "[i]t seems axiomatic that if we are to arrive at a just result in any particular case, the voices of the children must be heard." *Id.* at 6.

The court of appeals extended our rationale from *J.R.* to custody cases under the Minnesota Rules of Civil Appellate Procedure in *Banal-Shepherd v. Shepherd*. 829 N.W.2d 426 (Minn. 2013), *rev. denied* (Minn. May 21, 2013). *Banal-Shepherd* involved a custody dispute between unmarried parents who had joint legal and physical custody of their child. *Id.* at 427. The district court appointed a GAL, who became a party to the case and made custody recommendations to the court. *Id.* The district court followed part of the GAL's recommendation, and ordered that the parents share legal custody, but granted physical custody to only one parent. *Id.* Then, the district court discharged the GAL and the GAL program. *Id.* One parent appealed but failed to serve a notice of appeal on the GAL or the GAL program. *Id.* The court of appeals held that failure to serve the GAL was a jurisdiction-depriving defect because the GAL was an adverse party under Minn. R. Civ. App. P. 103.01, subd. 1, which meant the parent was required to serve the GAL with a notice of appeal to perfect the appeal. *Banal-Shepherd*, 829 N.W.2d at 428. The court of appeals explained that the role of a GAL "is to represent the best interests of the child, as determined by the guardian." *Id.* *Banal-Shepherd*, which is procedurally identical to this case, has been authoritative law in Minnesota for 10 years.

Minnesota Rule of Civil Appellate Procedure 103.01 requires service on the "adverse party or parties" to perfect an appeal. *See also* Minn. R. Civ. App. P. 104.01, subd. 1 (requiring an appeal to be taken within 60 days of the entry of the judgment or within 60 days of service of notice of the filing of an appealable order). We have explained that an "adverse party" within the meaning of the rule "means the party whose interest in relation to the subject of the appeal is in direct conflict with a reversal or modification of

the order or judgment from which the appeal is taken." *Peterson v. Joint. Indep. Consol. Sch. Dist. No. 116 & No. 136*, 58 N.W.2d 465, 467 (Minn. 1953); *see also Larson v. Le Mere*, 18 N.W.2d 696, 698 (Minn. 1945) ("Any party who would be prejudiced by a reversal or modification of an order, award, or judgment is an adverse party on whom a writ of certiorari or notice of appeal must be served.").

The facts here demonstrate that ruling in line with *Banal-Shepherd* and *J.R.* is the correct result because the GAL in this case was certainly an adverse party to the Blakeys' appeal. When this custody litigation commenced, K.J. was only three years old and was diagnosed with Eosinophilic Esophagitis, Eosinophilic Gastritis, and Gastroesophageal Reflux Disease, all of which made her throw up often and required multiple surgical procedures for observation of her esophagus and stomach lining. The third-party custody petition arose because K.J.'s paternal great aunt and uncle believed K.J.'s mother was medically neglecting K.J., causing her conditions to worsen. Ultimately the case involved four competing groups: K.J.'s paternal great aunt and uncle, the Blakeys; K.J.'s paternal grandparents, the Alexanders; K.J.'s father, Andrew Alexander; and K.J.'s mother, Jovanda Jones. The case was litigated heavily before the district court, involving many motions, cross-motions, hearings, and deteriorating relationships amongst the parties over the course of a year and a half.

The GAL was the only person tasked with advocating for K.J.'s best interests throughout this contentious litigation process. The GAL initially recommended that Jones get sole legal and physical custody of K.J., but later updated her report to recommend that Jones and Alexander share joint legal and physical custody of K.J., noting that the parents

were administering K.J.'s medications as prescribed and that her medical conditions had greatly improved.[1] Meaning, the GAL's recommendations were at odds with the Blakeys' request for third-party custody of K.J.

The district court ultimately followed the GAL's recommendation and dismissed the Blakeys' petition for third-party custody. The Blakeys appealed, seeking reversal of the denial of their petition for third-party custody. In their statement of the case to the court of appeals, the Blakeys listed 18 questions on which they sought review, including whether the district court abused its discretion when it accepted and relied upon the GAL's report while simultaneously denying the Blakeys' request for a hearing to "address misinformation, incomplete information and materially false allegations extremely prejudicial to [the Blakeys] that were replete throughout the [GAL's] report"; and whether the district court erred and abused its discretion by failing to order a continuance after the Blakeys informed the court the GAL was not cooperating with the discovery process. The Blakeys admitted in their motion to the court of appeals opposing respondent's motion to dismiss that "there are several legal issues identified in the appeal that, [sic] specifically

---

[1] The GAL was concerned about "the level of animosity within the Alexander/Blakey family" because of the strained relationships between the Alexanders and Blakeys "that have spilled over into these proceedings." The GAL explained that the Blakeys' claim that their concern is about K.J.'s medical needs, "however, there it [sic] has also been expressed by multiple family members and [the] Blakey[s] themselves, that they are more able to provide K[.J.] with a good life," so it seems like "their intentions with respect to filing for custody may go beyond concerns regarding medical neglect." The GAL was also concerned that the Blakeys "may be unable or unwilling to encourage and support a relationship between K[.J.] and her parents and . . . her paternal grandparents." The GAL noted that she did "not recommend[] a Court-ordered visitation schedule for [the] Blakey[s]. There continues to be a very high level of family conflict that puts K.[J.] in the middle and is not in her best interests."

relate to the [GAL]," but claimed that the GAL could not be considered a party because she was not truly interested in K.J.'s best interests and did not fulfill all her legally required duties and responsibilities.

In sum, the Blakeys' arguments on appeal directly involved and challenged the GAL's recommendations to the district court. Moreso, the Blakeys' allegations about the GAL's actions, or lack thereof, on appeal could have colored the court of appeals' consideration of the GAL's ultimate recommendation to the district court and thus prejudiced the GAL's position. Consequently, the GAL is an adverse party within the meaning of Rule 103.01. *See Le Mere*, 18 N.W.2d at 698 ("Any party who would be prejudiced by a reversal or modification of an order, award, or judgment is an adverse party on whom a writ of certiorari or notice of appeal must be served."). Not requiring service of the appeal on the GAL leaves the GAL without notice of the Blakeys' allegations and without the ability or chance to respond. Given that the GAL's sole purpose in these proceedings was to act as K.J.'s voice and advocate on her behalf, depriving the GAL from knowing about and participating in the appeal, which directly challenges her recommendations on K.J's behalf, does *not* serve the best interests of K.J. because it renders her voiceless on appeal.

The district court's appointment of the GAL in this case was mandatory under Minn. Stat. § 518.165, subd. 2 (2022) because the court had "reason to believe that the minor child [was] a victim of domestic child abuse or neglect." This mandatory appointment required the GAL to conduct an independent investigation to determine the facts relevant to the child's and family's situation—this investigation "must include . . . reviewing

relevant documents; meeting with and observing the child in the home setting and considering the child's wishes, as appropriate; and interviewing parents, caregivers, and others with knowledge relevant to the case." Minn. Stat. § 518.165, subd. 2a(1) (2022). Additionally, after appointing the GAL, the district court ordered that the GAL "shall" be a party to the case. The district court later extended the GAL's appointment, stating that the "appointment w[ould] expire pursuant to further order of the Court." When a GAL is made a party to case, as here, their role is unique given the statutes and rules defining their obligations and rights in these proceedings. The GAL's primary obligation is to advocate for the best interests of a child throughout the proceedings by "advocat[ing] for the best interests of the child," sharing information to "promote cooperative solutions that are in the best interests of the child," "monitor[ing] the best interests of the child," and "present[ing] written reports on the best interests of the child." Minn. Gen. R. Prac. 905.01(b)–(e); *see also* Minn. Stat. § 518.165, subd. 2 (requiring a GAL to "represent the interests of the child and advise the court with respect to custody and parenting time" when appointment of a GAL is required).

The majority contends that the district court's discharge of the GAL had the same legal effect as dismissing a party. This contention fails to recognize the reality of a GAL's role and the district court's language in this case. When the district court discharged the GAL in December 2021, after dismissing the custody petition, it did so because the GAL "ha[d] fulfilled the duties and obligations assigned by the Court." Consequently, this discharge is most logically understood as relieving the GAL from continuing to investigate and issue reports on K.J.'s best interests because the district court viewed the proceeding

as over. This discharge order *does not* explicitly state that the GAL was dismissed as a party to the case. And, as a party, the GAL has a number of rights, including the right to bring post-trial motions and to appeal court orders. *See* Minn. R. Gen. Prac. 907.02(l)–(m).[2] In order for the GAL to meaningfully use this right to participate in an appeal, the GAL must, at a minimum, have notice of an appeal.

Additionally, there are no rules, statutes, or precedent from our court that describe the legal effect of discharging a GAL, and certainly no authority states that a discharge of a GAL has the same legal effect as dismissing a party. Dismissal is defined as "[t]ermination of an action, claim, or charge without further hearing," *Dismissal*, *Black's Law Dictionary* (11th ed. 2019), and "to put out of judicial consideration." *Merriam Webster's Collegiate Dictionary* 360 (11th ed. 2003). Discharge is defined as "[a]ny method by which a legal duty is extinguished," *Discharge*, *Black's Law Dictionary* (11th ed. 2019), and "to release from an obligation," *Merriam Webster's Collegiate Dictionary* 356 (11th ed. 2003).

These definitions not only differ from each other, but also describe distinct legal situations. Dismissal from a case, in the context of a party dismissal, conjures an image of a party that settles out of litigation before it proceeds to trial, meaning its involvement in the case is completely resolved before trial happens. That dismissed party has no remaining

---

[2] These rights also include the right to legal representation, be present at all hearings, conduct discovery, bring motions before the court, participate in settlement agreements, subpoena witnesses, make arguments in support of or against the petition, present evidence, cross-examine witnesses, request review of findings and recommended orders, and request review of a disposition upon a showing of substantial change or that the disposition was inappropriate. Minn. R. Gen. Prac. 907.02(a)–(k).

interest in the litigation moving forward because it has already fully and completely resolved its portion of the case. Discharge, however, conjures a different image of someone who was appointed to fulfill a specific role and, upon completing their duties, is released from a continuing obligation. These differences are magnified when considered in the context of a GAL's duties and purpose—to constantly advocate for a child's best interests throughout proceedings and act as the child's voice before the court.

Moreso, the GAL program is overworked and underfunded. Office of the Legislative Auditor, State of Minnesota, *Evaluation Report: Guardian ad Litem Program* 41–45 (2018). Even when the GAL program prioritizes assigning GALs to cases where the appointment of a GAL is mandated by statute, the program has historically "been unable to meet the court's demand for [GAL] services." *Id.* at 42–43. This inability to produce GALs when needed "slow[s] down the court process" and causes "children's voices [to be] lost." *Id.* at 44. Many GAL Program district managers explain that "the principal reason for delays in assigning [GALs] to cases is that the program does not have enough staff or resources to handle all of the cases." *Id.* at 45. Despite setting an internal goal that full time employee GALs would not carry more than 30 cases at once, the median GAL caseload in 2017 was 40 cases, with some GALs carrying as many as 100 cases. *Id.* at 46. Carrying caseloads this high resulted in a majority of the full time GALs feeling as though they did not have sufficient time to complete their duties in each case, leading to fewer consistent investigations and delayed reporting. *Id.* at 47–48. High caseloads preventing thorough investigations can have "serious consequences" and cause "long term

ramifications" for a child because it means there may be no one presenting an accurate representation of the child's best interests to the court. *Id.* at 48.

Given how strained the GAL program is, district courts choosing to discharge a GAL's duties after issuing final orders is a logical way to reduce caseloads and reduce strain on GALs; this is because discharge releases the GAL from having to continuously carry out statutory duties after a case has resolved before the district court. Construing this discharge to be a release from active duties rather than a dismissal from a case as a party is the most efficient way to ensure children's best interests are advocated for on appeal without creating an additional burden on the GAL program in the interim between a district court's final order and an appeal.

The practical consequences of the majority's holding cannot be understated. Not including a discharged GAL as an adverse party within the meaning of Rule 103.01 means that the best interests of children—which are the central focus of custody proceedings—will be left without representation on appeal. Preventing a GAL's participation on appeal is paradoxical given our holding that a child's best interests remain the guiding principle on appeal of custody cases. *See Pikula v. Pikula*, 374 N.W.2d 705, 711 (Minn. 1985) ("The guiding principle in all custody cases is the best interest of the child."); *see also* Minn. Stat. § 257C.04, subd. 1 (2022) (containing the best interests factors that the court must consider (and the GAL advises on) in custody cases, including but not limited to the child's preference, interactions between the child and the parties, and the parties' capacity to give the child love).

The GAL Board website quotes former chief justice of this court, the Honorable Kathleen Blatz, who stated that "[j]ustice for children cannot be sought, let alone achieved, if their voice is not represented in the hearings that determine their fate. Guardians ad Litem are that voice." *What is a GAL?*, *Minn. Guardian Ad Litem Bd.* (last accessed July 18, 2023), https://mn.gov/guardian-ad-litem/program-information/what-is-a-gal.jsp [opinion attachment]. The unfortunate consequence of the majority's opinion is that children will be completely voiceless in the appellate hearings that will determine their fate in child custody cases. Moreso, the majority opinion also has the result of minimizing and deemphasizing the imperative work that GALs do in these cases. Because I believe this outcome is not supported by the rules, statutes, or caselaw, and because this outcome is inconsistent with the requirement that a child's best interests be the central concern in custody cases, I respectfully dissent.

MOORE, III, Justice (dissenting).

I join in the dissent of Justice McKeig.



## What is a GAL?

A Guardian ad Litem is an advocate for a child whose welfare is a matter of concern for the court. In legal terms, it means "guardian of the lawsuit."

When the court is making decisions that will affect a child's future, the child needs and deserves a spokesperson -- an objective adult to provide independent information about the best interests of the child. While other parties in the case are concerned about the child, the Guardian ad Litem is the only person in the case whose sole concern is the best interests of the child and he or she is assigned as an advocate for the child for the durations of the court process.

Different from a legal guardian, the Guardian ad Litem has no control over the person or property of the child and does not provide a home for the child. The Guardian ad Litem does not function as the child's attorney and does not provide direct services to the child.

Guardians Ad Litem conduct interviews and observe the children and significant people in their lives. They review social service, medical, school, psychological and criminal records and reports. They attend meetings with the other professionals involved with the children and their families. They outline options and make written and oral recommendations in court regarding the short and long term best interests of the children. They monitor court ordered plans to ensure the children's best interests are being met. . Finally, it is not the GAL's job to make decisions about the child's future, but to make recommendations to the court to enable the court to make the best possible decision.

Guardians ad Litem in Minnesota include specially trained community volunteers and state employees.

---

"Justice for children cannot be sought, let alone achieved, if their voice is not represented in the hearings that determine their fate. Guardians ad Litem are that voice."

*-Former Chief Justice Kathleen Blatz, Minnesota Supreme Court*

---